United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 96-1320

Michael E. Madsen,           *
                                   *
        Appellee,        *
                                   *
    v.                    *  Appeal from the United States District
                                 *  Court for the Western District of
David R. Dormire; Jeremiah (Jay) W.  *  Missouri.
Nixon,                   *
                                 *
        Appellants.     *

_____

Submitted: September 12, 1997
Filed:  February 26, 1998
_____

Before McMILLIAN, ROSS and HANSEN, Circuit Judges.
_____

ROSS, Circuit Judge.

The State of Missouri appeals from a judgment of the district court granting Michael E. Madsen's petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] We reverse.

---

[1]On May 12, 1997, this court granted the State's motion to dismiss Madsen's cross-appeal.

In 1987, Madsen was convicted of forcible rape and sodomy, in violation of Mo. Rev. Stat. §§ 566.030, .060. His conviction was affirmed on appeal. State v. Madsen, 772 S.W.2d 656 (Mo. 1989) (en banc), cert. denied, 493 U.S. 1046 (1990).

At trial, the victim testified that as she was walking by the side of a road, Madsen stopped his car and offered her a ride. She refused, but Madsen forced her inside the car and put a knife to her throat. In an unsuccessful attempt to grab the knife, she cut her finger. Madsen then bound her wrists with a rope and took her to a bedroom in his house, where he cut the rope and raped and sodomized her. After the acts, the victim, realizing that her finger was bleeding from the cut, went into a bathroom and wiped the blood on a towel. Although Madsen threatened to kill the victim if she called the police, he drove her to a friend's home. The victim then told her friend what had happened and called the police. After officers took her statement, they brought her to a hospital for an examination.

The State presented evidence to corroborate the victim's testimony. The examining doctor testified that he saw a cut on the victim's finger, which was consistent with a cut from a sharp object, and also saw bruising on both her wrists, which was consistent with binding by a rope. Police officers identified items seized from Madsen and his house, including a knife found in his pocket, a rope found in the bedroom, blood-stained items found in the bedroom, and a blood-stained towel found in the bathroom.

The State, however, did not present the testimony of Patsy Miller, the forensic chemist who performed serology tests on the seized items, or her serology report. In

her report, which was provided to Madsen before trial, Miller concluded that the blood type on the items was different than the victim's blood type. At the start of trial, the State told the court that although it had endorsed Miller as a witness, it would not call her because she was "unreliable."

After the State rested, Madsen's counsel attempted to introduce the serology report in order to impeach the victim's testimony. The State objected on the ground that Miller was incompetent to perform blood typing. Out of the presence of the jury, among other things, the State introduced evidence that Miller had twice failed proficiency tests in blood typing. The court excluded the report.

In his defense, Madsen testified that the victim consented to the sexual acts. On cross-examination, Madsen acknowledged that he had previous convictions for aggravated battery and sodomy.

On direct appeal, Madsen argued that the State's failure to disclose that Miller was incompetent to testify before trial violated Brady v. Maryland, 373 U.S. 83, 87 (1963), in which the Supreme Court held that the government's suppression of material, exculpatory evidence violated due process. Madsen also argued that the trial court erred in excluding the serology report. The state supreme court rejected his arguments. Madsen, 772 S.W.2d at 662.

In his habeas corpus petition, Madsen renewed his Brady argument. Although the district court conceded that Miller's incompetency was not exculpatory evidence, the court held that the State nonetheless violated Brady. The court relied on United

-3-

States v. Bagley, 473 U.S. 667, 676 (1985), in which the Supreme Court held that "[i]mpeachment evidence, . . . as well as exculpatory evidence, falls within the Brady rule."  The district court reasoned that the State's failure to disclose Miller's incompetency before trial "in effect eliminated valuable impeachment evidence" because it "prevented [Madsen] from having the opportunity to procure an independent expert to test the samples."  As to whether disclosure of the information was material, the court concluded that had Madsen presented his "best defense" the results of the trial would have been affected.

On appeal, the State argues that the district court erred in holding that the State's failure to disclose Miller's incompetency before trial violated Brady.  We agree.  This case is similar to Wood v. Bartholomew, 516 U.S. 1 (1995) (per curiam).   In that case, the Ninth Circuit held that the State's failure to disclose polygraph results of a government witness constituted a Brady violation, reasoning that "the information, had it been disclosed to the defense, might have led [defendant's] counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized."  Id. at 6.   The Supreme Court reversed, holding that because the polygraph results were inadmissable at trial, "[t]he information at issue . . . [wa]s not 'evidence' at all."  Id.  The Court also criticized the Ninth Circuit's attempt "[t]o get around this problem," noting that the appellate court's reasoning regarding the effect the nondisclosure had on discovery was "based on mere speculation, in violation of the standards we have established."  Id.   Citing Kyles v. Whitley, 514 U.S. 419, 433-34 (1995), the Court stated that "evidence is material under Brady . . . only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different."  Wood, 516 U.S. at 5.

Likewise, in this case, the information about Miller's incompetency is not "'evidence' at all." Id. at 6. The information could not be used to impeach the victim's testimony or the officer's testimony concerning the blood-stained items.

In addition, the district court 's attempt "[t]o get around this problem" is "based on mere speculation." Id. There is nothing in this record which supports the court's apparent assumption underlying its materiality finding that had the seized items been tested by a competent chemist, the results would have been the same as Miller's -- that is, the blood on the items would not be the same type as that of the victim's blood. To the contrary, the State's expert serology witness testified that based on his review of Miller's deposition testimony concerning the testing of the seized items, Miller's results were "contrary to what the results should have been." Among other things, the expert noted that Miller had used inappropriate tests and an insufficient number of samples and failed to follow proper procedures. Given that the examining doctor corroborated the victim's testimony that her finger was cut by a knife, it is more likely that had a competent chemist performed blood tests on the seized items, the results would have shown that the blood on the items matched that of the victim's. Thus, even assuming that information about Miller's incompetency could be considered evidence, the information would not be material because "[t]here simply was no showing to indicate a reasonable probability that disclosure of [the information] would have changed the outcome of the trial." United States v. Hayes, 120 F.3d 739, 743 (8th Cir. 1997).

We also do not agree with the district court that the State's failure to disclose Miller's incompetency before trial "prevented" Madsen from seeking independent serology testing. Although the State's conduct may have "lulled [Madsen] into a false

sense of security," it did not deprive him of the opportunity to have the seized items tested by an independent chemist. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Madsen's "counsel was aware of the [items] and had the opportunity to test [them]; the [State] never interfered with his ability to do so." Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997).

Even if the information about Miller's incompetency could be considered favorable evidence, there is yet another reason why the State's conduct would not violate Brady . This court has held "there is no due process violation under Brady 'as long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence.' " United States v. Jones, 101 F.3d 1263, 1272 (8th Cir. 1996) (quoting Nassar v. Sissel, 792 F.2d 119, 121 (8th Cir. 1986)), cert. denied, 117 S. Ct. 1566 (1997). This is so because "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford, 429 U.S. at 559. Indeed, we have held that "[w]here the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, Brady is not violated." United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996). In this case, when Madsen learned of Miller's incompetency at trial, he did not request a continuance in order to have the items tested, even though the serology expert believed that the "chances [were] excellent" that at that time a chemist could have determined the type of blood on the seized items. See Weatherford, 429 U.S. at 561.

Although we hold that the State's belated disclosure of Miller's incompetency did not violate Brady, we want to make clear that we do not condone the State's conduct in this case. We share the district court's concern that "[a] criminal trial

-6-

[should be] a quest for truth."  However, "<u>Brady</u> was not intended as a constitutional cure-all."  <u>Gonzales</u>, 90 F.3d at 1369 n.3.  In the circumstances of this case, there simply is no basis shown for habeas relief based on a <u>Brady</u> violation.[2]

Accordingly, we reverse the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[2]Because of our disposition of the <u>Brady</u> issue, we do not address the State's contention that the district court improperly combined two grounds raised in Madsen's habeas petition into one claim in order to find a <u>Brady</u> violation.