959 P.2d 836

CITY EXPRESS, INC., a Hawai'i corporation, Plaintiff,

v.

EXPRESS PARTNERS, a registered Hawai57Fi joint venture, Respondent–Appellant/Cross–Appellee,

and

Architects 2, Inc., Douglas Sonoda, Lloyd Sako, Petitioners–Appellees/Cross–Appellants,

and

Dura/Constructors, Inc., Thomas Enomoto, Land Process Service Corp., and John Does 1–10, Defendants,

and

EXPRESS PARTNERS, a registered Hawai'i joint venture, Respondent–Third–Party Plaintiff–Appellant/Cross–Appellee,

v.

ARCHITECTS 2, INC., Douglas Sonoda, Lloyd Sako, Petitioners–Third–Party Defendants–Appellees/Cross–Appellants,

and

John Does 1–20, et al., Third–Party Defendants,

and

Architects 2, Inc., et al., Fourth–Party Plaintiffs,

and

Thomas T. Enomoto, et al., Defendants.

No. 17351.

Supreme Court of Hawai'i.

June 19, 1998.

Reconsideration Denied July 24, 1998.

Eric T.W. Kim and Edmund K.U. Yee, on the briefs, Honolulu, for petitioners-appellees/cross-appellants.

Patrick Jaress and Linda Mei–Leong, on the briefs, for respondent-appellant cross-appellee on the motion.

Before LEVINSON, Acting C.J., and NAKAYAMA and RAMIL, JJ., SOONG, Circuit Judge, in place of MOON, C.J., Recused and NAKATANI, Circuit Judge, in place of KLEIN, J., recused.

NAKAYAMA, Justice.

Respondent-appellant/cross-appellee Express Partners filed an appeal of this action after a directed verdict was entered in favor of petitioners-appellees/cross-appellants Architects 2, Inc., Douglas Sonoda, and Lloyd Sako [hereinafter collectively referred to as Architects 2]. The Intermediate Court of Appeals (ICA) affirmed in part, vacated in part, and remanded for a new trial. We granted certiorari to address the application of the economic loss rule to a negligence action between an owner and an architect who are in privity of contract. Because we hold that the circuit court was correct in ruling that the economic loss rule bars Express Partners' negligence action, we: (1) reverse the opinion of the ICA; (2) order the opinion of the ICA depublished pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals; and (3) affirm the ruling of the circuit court, which granted a directed verdict in favor of Architects 2.

## I. *BACKGROUND*

On April 14, 1983, the president of plaintiff City Express, Inc., in his individual capacity, entered into a joint venture agreement with developer Thomas Enomoto to construct a new warehouse suited for the purposes of City Express, a warehouse and trucking company. The business entity created by this joint venture agreement is Express Partners.

Express Partners, through Thomas Enomoto, hired Architects 2 to design the warehouse.[1] Architects 2 prepared blueprints, and the warehouse was constructed by Land Process Services Corporation, Ind–Comm Properties, Inc. (Ind–Comm), and Dura/Constructors, Inc. (Dura/Constructors). The warehouse was constructed with two levels and a ramp from the first to the second floor.

Douglas Sonoda and Lloyd Sako, an architect and engineer respectively employed by Architects 2, testified at trial that it was their understanding, in designing the building, that the second floor would not be utilized by forklifts. Instead, the second floor would be used solely for storage of light objects. However, a portion of the blueprints prepared by Architects 2 indicates that the ramp was "for forklift use."

City Express moved into the warehouse upon its completion and began to utilize forklifts on the second floor of the structure. The use of forklifts caused the floor on the second level to crack. In an attempt to correct the problem, an additional five inches of cement was poured. However, City Express claimed that this did not solve the problem. The additional weight caused structural damage and the floor again began cracking. City Express had to temporarily vacate the building while remedial work was done.

In January 1985, Express Partners, the owner of the building, notified City Express that the type of forklifts commonly utilized in the industry could not be operated on the second floor. On March 1, 1985, City Express went out of business. The building was subsequently converted to office use.

On July 31, 1985, City Express filed a complaint against Express Partners. On January 10, 1986, Express Partners filed a third-party complaint against Architects 2. Architects 2 then filed a fourth-party complaint against various entities, including Enomoto. On February 23, 1989, City Express amended its complaint to include claims against Architects 2, Dura/Constructors, and Ind–Comm.

On September 5, 1992, the parties reached a settlement agreement that disposed of all claims except: (1) Express Partners' third party claims against Architects 2; and (2) Architects 2's claims against other parties for indemnification and contribution if found liable on Express Partners' claim. The case proceeded to trial on September 5, 1991.

---

1. Enomoto had a retainer agreement with Architects 2 for its services on projects with which he

was involved.

Prior to opening statements, Express Partners informed the court that the sole issue at trial was the alleged professional negligence of Architects 2.

After the conclusion of Express Partners' case, Architects 2 moved for a directed verdict. The circuit court granted this motion. The court entered findings of fact and conclusions of law, stating in relevant part:

## FINDINGS OF FACT

1. Express Partners introduced no expert testimony on the standard of care for architects or engineers.

2. Express Partners introduced no evidence that the blueprint ramp detail fell below the standard of care for an architect or that it caused anyone to use forklifts on the original second floor.

3. Express Partners has not alleged breach of contract and has not introduced any evidence of a contract between Express Partners and [Architects 2].

. . . .

6. Express Partners introduced no evidence that any change in value in the warehouse building was caused by the condition of the building.

## CONCLUSIONS OF LAW

1. In a claim for professional negligence, an architect's or engineer's standard of care must be established by expert testimony, and failing such expert testimony a prima facie case of negligence has not been established.... Since Express Partners has failed to elicit any such evidence, there is no issue of negligence by [Architects 2] to be decided by the jury.

2. In a claim for negligence, no recovery may be had for "economic loss" damages, such as cost to repair the product of the alleged negligence, its diminished value, or consequential loss of profit.

Such "economic loss" damages must instead be recovered in contract.... Since Express Partners' claim is in negligence, it may not recover "economic loss" damages.

3. Even if "economic loss" damages were recoverable by Express Partners, Express Partners has not put on any evidence of the cost to correct upon which the jury could base any award of damages. Having failed to show any evidence of the cost to correct, Express Partners has also failed to produce any evidence from which the jury could determine that the cost to correct is grossly and unfairly disproportionate to the benefit to be achieved by correction. Without said determination, the measure of damages is not diminution of value ... and there would be no basis upon which the jury could award as damages any diminution of value.

Express Partners timely appealed, and the appeal was assigned to the ICA. Express Partners raised several issues on appeal. The ICA partially affirmed and partially vacated the ruling of the circuit court and remanded for a new trial. The ICA held that Express Partners could recover damages against Architects 2 for: (1) additional costs; (2) lost rent; and (3) either (a) the cost of remedying the alleged defect or (b) the difference between the value of the building as designed and the value it would have had if it had been properly designed. Architects 2 timely filed a petition for writ of certiorari.

■ We granted certiorari to address an important issue of first impression in this jurisdiction, namely, the availability of economic loss damages in a negligence action against a design professional.[2]

---

2. The petition for certiorari also raised the ICA's dismissal of Architects 2's cross-appeal on the grounds that, as the prevailing party, they were not entitled to cross-appeal. We agree with Architects 2 that its cross-appeal was not barred on this ground. While the general rule is that a prevailing party may not file a direct appeal, there is an exception for cross-appeals. *See* 15A

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3902. If the appellate court reverses the ruling of the lower court, then it must address any relevant issues properly raised on cross-appeal. However, because we affirm the circuit court's directed verdict in favor of Architects 2, the cross-appeal is moot.

## II. DISCUSSION · ·

**A. In the context of construction litigation, where a party is in privity of contract with a design professional, economic loss damages are limited to contractual remedies, and a negligence action may not be maintained.**

 The economic loss rule bars recovery in tort for purely economic loss. Where, as in this case, negligent design of a building is claimed, economic loss damages are those that pertain solely to the costs related to the operation and value of the building itself. Excluded are costs for personal injuries caused by the defective design or damage to property other than the building itself. The damages claimed by Express Partners and held allowable by the opinion of the ICA are purely economic—additional costs, lost rent, the cost of remedying the alleged building defects, and the difference between the value of the building as designed and the value it would have had if it had been properly designed.

The background and purpose of the economic loss rule was ably set out by the Washington Supreme Court, *en banc,* in *Berschauer/Phillips Construction Company v. Seattle School District,* 124 Wash.2d 816, 881 P.2d 986 (1994).

> The economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others. The economic loss rule was designed to prevent disproportionate liability and allow parties to allocate risk by contract.

*Id.,* 881 P.2d at 990 (citations omitted).

In *State ex rel. Bronster v. United States Steel,* 82 Hawai‘i 32, 919 P.2d 294 (1996), we held that the economic loss rule applied to "claims for relief based on a product liability or negligent design and/or manufacture theory." *Id.* at 40, 919 P.2d at 302. However, we held that the economic loss rule did not bar recovery by the State of Hawai‘i against a steel manufacturer who had made direct representations that its product was appropriate for the construction of a sports stadium. We held that the State could recover under Restatement (Second) of Torts § 552 (1977) for the tort of negligent misrepresentation.

In *United States Steel,* the issue of whether contractual privity would prevent the application of section 552 was not presented. No contract existed between the steel manufacturer and the State of Hawai‘i. The injury to the State was arguably foreseeable and the manufacturer had made direct representations to the State regarding its product. We agreed with the State that the circuit court erred in dismissing its tort claims on the basis that the economic loss rule barred the negligent misrepresentation claim.

> Section 552 provides in pertinent part that:
> Information Negligently Supplied for the Guidance of Others
>
> (1) One who, in the course of his [or her] business, profession or employment, or in any other transaction in which he [or she] has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) ... [T]he liability stated in subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he [or she] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he [or she] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

We recognize that section 552(2) contemplates a tort action for negligent misrepresentation by the party who contracts directly with the supplier of information.[3·] However,

---

3. This is expressed in the comment to this section, which states that "[t]he person for whose guidance the information is supplied is often the person who has employed the supplier to furnish it, in which case, if it is supplied for a consideration paid by that person, he has at his election

several other jurisdictions that have considered the issue presented by this appeal have concluded that, in the context of construction litigation regarding the alleged negligence of design professionals, a tort action for negligent misrepresentation alleging damages based purely on economic loss is not available to a party in privity of contract with a design professional. We agree. In this case, involving a design professional who acts under contract with the owner, we hold that recovery is properly limited to contract remedies and that a tort action under section 552 is not available.

In the context of construction litigation involving design professionals, sound policy reasons counsel against providing open-ended tort recovery to parties who have negotiated a contractual relationship.

> If tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity. The construction industry in particular would suffer, for it is in this industry that we see most clearly the importance of the precise allocation of risk as secured by contract. *The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract.*

*Berschauer/Phillips*, 881 P.2d at 992 (emphasis added). Academic commentary recognizes that "there is a growing trend of cases which bar recovery in negligence between parties to a contract, where the damages constitute what is known as 'economic loss.' " Steven Stein, *Construction Law* § 11.04[2] (1997).

Parties have the freedom to contract.[4] "Construction projects are characterized by detailed and comprehensive contracts that form the foundation of the industry's operations. Contracting parties are free to adjust

their respective obligations to satisfy their mutual expectations." *American Towers Owners Ass'n v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1190 (Utah 1996).

> [W]hen the plaintiff has contracted to protect against economic liability caused by the negligence of the defendant, there is no claim under Restatement of Torts (Second) § 552 for purely economic loss. We believe that this ruling not only encourages the parties to negotiate the limits of liability in a contractual situation, but it holds the parties to the terms of their agreement.

*Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Board*, 929 P.2d 1228, 1235 (Wyo.1996). Our holding preserves the right of design professionals to limit their exposure to liability through contract.

Express Partners admits that it was in privity of contract with Architects 2, stating in its opening brief that "privity of contract between [Express Partners] and Architects 2 was both alleged and established." However, the contract was not presented in evidence and Express Partners proceeded to trial solely on a negligence theory. Because the purely economic damages sought by Express Partners are not recoverable in negligence, the circuit court correctly granted a directed verdict in favor of Architects 2.

### III. CONCLUSION

For the foregoing reasons we reverse and order depublished the opinion of the ICA and affirm the judgment of the circuit court in favor of Architects 2.

---

either a right of action under the rule stated in this section or a right of action under the contract under which the information is supplied." Restatement of Torts (Second) § 552 comment g (1976).

4. "In general, parties may contract as they wish, and courts will enforce their agreements without

passing on their substance.... The principle of freedom of contract is itself rooted in the notion that it is in the public interest to recognize that individuals have broad powers to order their own affairs by making legally enforceable promises." Restatement of Contracts (Second) Introductory Note to Chapter 8 (1979).