**MAINE RUBBER INTERNATIONAL,**
**Plaintiff,**

v.

**ENVIRONMENTAL MANAGEMENT**
**GROUP, INC., et al., Defendants.**

### No. CIV. 02–226–P–H.

United States District Court,
D. Maine.

Jan. 5, 2004.[1]

deadline of December 31, 2003 is not inconsistent with that date.

# AMENDED ORDER AFFIRMING IN PART AND REJECTING IN PART RECOMMENDED DECISIONS OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

The United States Magistrate Judge filed with the court on August 6, 2003, with copies to counsel, his Memorandum Decision on Motion to Strike and Recommended Decision on Defendant Environmental Management Group's Motion for Partial Summary Judgment. The defendant Environmental Management Group, Inc. ("EMG") filed an objection to the Recommended Decision on August 14, 2003.

On October 10, 2003, the Magistrate Judge filed his Recommended Decision on Defendants David Maglietta's and Felicia Pfeffer's Motion to Dismiss. The plaintiff filed an objection to that Recommended Decision on October 27, 2003.

I have reviewed and considered the Recommended Decisions, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decisions; and I affirm in part and reject in part the recommendations of the Magistrate Judge as discussed below.

Maine Rubber International ("Maine Rubber") contracted to buy real estate in Portland. It hired EMG, a Maryland engineering firm, to perform an environmental site assessment before it closed the deal. EMG employees Maglietta and Pfeffer issued Maine Rubber a favorable report on behalf of EMG.[2] Maine Rubber asserts no personal injuries or property

Kurt E. Olafsen, Portland, ME, for Plaintiff.

Daniel Rapaport, Sigmund D. Schultz, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Defendants.

2. In my previous order dated December 18, 2003 (and which I now amend). I stated that Maine Rubber had proceeded to purchase the real estate. That was an unwarranted inference. In fact, Maine Rubber terminated its purchase and sale contract to buy the Dura-Stone property prior to the scheduled closing. Letter from Def.'s Counsel Sigmund D. Schultz of 12/24/03 (Docket No. 73), *accord* Pl.'s Memo. in Opposition to Def.'s Motion to Exclude, at 2 (Docket No. 51). My earlier misstatement, however, does not affect the analysis.

damage, but claims unexpected expenses, and shutdown and relocation costs because of numerous environmental problems on the site not uncovered by Maglietta and Pfeffer. Maine Rubber has sued EMG, Maglietta and Pfeffer for negligence and negligent misrepresentation, and EMG alone for breach of contract. Jurisdiction is based upon diversity of citizenship and Maine law applies.

The Magistrate Judge concluded that the District of Maine lacks personal jurisdiction over the two individuals—Maglietta for lack of substantial contacts, and Pfeffer because of the so-called fiduciary shield rule, inasmuch as all her Maine contacts were on behalf of her employer, EMG. As for EMG, the Magistrate Judge concluded that the Maine Law Court would extend the prohibition it has announced on tort-based economic loss recovery for the sale of goods (the so-called economic loss doctrine) to service contracts. But he concluded that the Law Court would exempt from the doctrine professional services contracts like that here. He also concluded that negligent misrepresentation is an independent tort and exempt from the economic loss doctrine. He therefore denied EMG's motion for summary judgment on both tort claims. (No motion was made on the breach of contract claims.)

I accept some parts of the Magistrate Judge's Recommended Decisions and reject other parts. Specifically, on personal jurisdiction it is not for this federal court to apply the fiduciary shield exemption to narrow the broad scope of personal jurisdiction Maine law asserts. On economic loss, I disagree that negligent misrepresentation is exempt from the doctrine in Maine. Although there is no guidance from the Law Court, I do agree with the Magistrate Judge that the Maine Law Court probably would apply the doctrine to service contracts. I disagree that the

Law Court would exempt an environmental engineering services contract like that here.

PERSONAL JURISDICTION

I **AFFIRM** the Magistrate Judge's recommendation on the defendant Maglietta and **GRANT** his motion to dismiss on personal jurisdiction grounds for insufficient contacts with the State of Maine.

I **REJECT** the Magistrate Judge's recommendation to dismiss the defendant Pfeffer for lack of personal jurisdiction. Pfeffer clearly had the requisite minimum contacts with the State of Maine. But she asserts that she had those contacts only in her capacity as an employee of EMG, not for any personal reasons. The so-called fiduciary shield doctrine, adopted by a number of courts, "generally precludes a court from exercising personal jurisdiction over a non-resident corporate agent for acts performed on behalf of his employer." *LaVallee v. Parrot–Ice Drink Prods. of Am., Inc.*, 193 F.Supp.2d 296, 301 (D.Mass. 2002). From the first creation of the fiduciary shield doctrine, however, it has been recognized as based upon equitable principles, not constitutional requirements. *See id.; Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1056 (4th Cir.1983); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 n. 3 (2d Cir. 1981); *United States v. Montreal Trust Co.*, 358 F.2d 239, 242–43 (2d Cir.1966). In this diversity case, I am governed by Maine law of personal jurisdiction, as limited by the United States Constitution. Maine has stated in its statutes:

[T]o insure maximum protection to citizens of this State. [this section] shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.

14 M.R.S.A. § 704–A(1) (2003). Likewise, many Law Court opinions confirm that personal jurisdiction extends to the utmost limit that the United States Constitution permits. *E.g., Jackson v. Weaver*, 678 A.2d 1036 (Me.1996); *Christiansen v. Elwin G. Smith, Inc.*, 598 A.2d 176 (Me. 1991). Therefore, whatever equitable attractions the fiduciary shield doctrine may have, since it is not constitutionally required I cannot apply it to limit the scope of Maine personal jurisdiction. I recognize that some other state courts with expansive jurisdictional language like Maine's have proceeded to apply the fiduciary shield doctrine. *E.g., Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1318 (1990). But Maine has never made any suggestion that it would limit the scope of its personal jurisdiction on anything but federal constitutional grounds, and there is no basis for me as a federal judge to predict that the Maine Law Court would do otherwise. *See Porter v. Nutter*, 913 F.2d 37, 41 (1st Cir.1990) ("We may, perhaps, be unadventurous in our interpretation of [state] law, but a plaintiff who seeks out a federal venue in a diversity action should anticipate no more."); *Martel v. Stafford*, 992 F.2d 1244, 1247 (1st Cir.1993) ("[A] diversity court, with exceptions not germane to this case, must take state law as it stands."). Accordingly, I DENY the defendant Pfeffer's motion to dismiss for lack of personal jurisdiction.

### ECONOMIC LOSS DOCTRINE

■ In *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267 (Me.1995), the Law Court adopted the economic loss doctrine. (The Court has not addressed the issue since.)

*Peachtree* involved allegedly defective condominium unit windows and doors that leaked. Unhappy unit owners sued the supplier on various tort theories. The Law Court affirmed the trial court's ruling that claims of negligence, negligent misrepresentation and product liability could not proceed against the suppliers. The Court reasoned that the defects harmed only the product purchased, not other property or people, and thus that any legitimate claims were only for breach of contract or warranty. According to the Law Court,

"The maintenance of product value and quality is precisely the purpose of express and implied warranties." A situation where the injury suffered is merely the "failure of the product to function properly," is distinguishable from those situations, traditionally within the purview of tort, where "the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property."

*Peachtree*, 659 A.2d at 270 (internal citations omitted). I agree with the Magistrate Judge that the Law Court's reasoning in Peachtree extends beyond purchases of property to service contracts as well.[3]

In *Peachtree*, the Law Court also affirmed the application of the economic loss doctrine to negligent misrepresentation, *id.* at 270, 273, and therefore I disagree with the magistrate Judge on that score. I GRANT summary judgment to the defendant EMG on Count III seeking tort damages for negligent misrepresentations allegedly contained in the report contracted for by Maine Rubber. *Accord Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66

---

**3.** I recognize that in *Fireman's Fund Ins. Co. v. Childs*, 52 F.Supp.2d 139 (D.Me.1999), Judge Carter found it impossible to predict what the Law Court would do in a professional services contract case, and certified the issue to the Law Court. However, the parties settled the case before any ruling was obtained.

F.3d 604, 620 (3d Cir.1995); *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 (9th Cir.1995); *Bailey Farms, Inc. v. NOR–AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994); *but see Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass.App.Ct. 15, 694 N.E.2d 401, 405 (1998); *PK Ventures, Inc. v. Raymond James & Assocs., Inc.*, 690 So.2d 1296, 1297 (Fla.1997); S. Tourek, T. Boyd and C. Schoenwetter, *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation*, 84 Iowa L.Rev. 875, 938 (1999).

The difficult question is whether Maine would carve out an exception to the economic loss doctrine for professional services contracts.[4] Courts that do create an exception express concern over the elimination of tort recovery for professional malpractice, and cite the need for such remedies against lawyers and accountants. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 17–18 (2d Cir.2000); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551–52, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (N.Y.1992); *Moransais v. Heathman*, 744 So.2d 973, 976 (Fla.1999); *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of America*, 693 N.Y.S.2d 554, 559–60

(N.Y.App.Div.1999).[5] Other courts recognize that concern by simply limiting the exception to professional services contracts that involve a fiduciary or extra-contractual relation (like attorney/client). *See, e.g., Jin Ok Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp.2d 874, 883–85 (N.D.Ill. 1999); *Collins v. Reynard*, 154 Ill.2d 48, 180 Ill.Dec. 672, 607 N.E.2d 1185, 1188–89 (1992). (This environmental engineering services contract involves no fiduciary relationship.) Other courts create no exception at all, at least in the instances that have come before them. *See, e.g., Joseph v. David M. Schwarz/Architectural Servs., P.C.*, 957 F.Supp. 1334, 1339–40 (S.D.N.Y. 1997); *City Express, Inc. v. Express Partners*, 87 Hawai'i 466, 468, 959 P.2d 836 (Haw.1998); *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, 352–53 (1990); *American Towers Owners Ass'n v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1189–90 (Utah 1996).

There is nothing in *Peachtree* that gives any hint where the Law Court might come out on this issue. But whatever the applicability of the economic loss doctrine to suits against lawyers and accountants, the logic of *Peachtree* encompasses the relationship here.[6] These were two commer-

---

4. Maine Rubber has not argued that the damages here fit within the exception for damages to "other property."

5. Some of those cases, however, involve conduct by defendants that occurred before a contractual relationship existed or that occurred outside the scope of the contract. *E.g., Hydro Investors*, 227 F.3d at 22. *See also McCutcheon v. Kidder*, 938 F.Supp. 820, 823–24 (S.D.Fla.1996).

6. *Peachtree* cited approvingly an Illinois case that described unrecoverable economic loss as "damages for inadequate value, ·costs of repair and replacement of defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." 659 A.2d at 270 n. 4 (citing *Moor-*

*man Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 449 (1982)). It also cited approvingly a U.S. Supreme Court admiralty case describing why economic loss should not be recovered in tort where there is a contractual relationship: "when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. Society need not presume that a customer needs special protection." *Id.*, n. 5 (citing *East River SS Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871–72, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). All these arguments apply here, where the product is the

cial entities able to bargain over the terms of their agreement, and they entered into a written contract to govern their relationship.[7] There was no risk of harm either to people or to other property. The critical issue here, as in *Peachtree,* is value and quality of what was purchased. Following *Peachtree,* I conclude that there is no reason not to leave Maine Rubber and EMG to their bargain. It bears noting that such an outcome does not mean there is no relief. Maine Rubber still has the traditional recourse for breach of contract and any damages it can prove under contract law standards, given the contract it entered into.[8] I therefore GRANT summary judgment to EMG on Count I, negligence.

Pfeffer has not moved for summary judgment on either tort count, probably because EMG's motion was filed before Pfeffer was ever joined as a party. It seems clear that the negligent misrepresentation claim cannot survive against her in light of my ruling on EMG's motion. It also seems unlikely that the negligence claim against her cannot survive the economic loss doctrine. *See Gerald M. Moore & Son, Inc. v. Drewry,* 251 Va. 277, 467 S.E.2d 811, 813 (1996) (even if the agent's negligence is established, absent privity of contract, economic loss doctrine precludes the recovery of damages based on economic loss alone); *Crawford v. Deutsche Bank AG,* 244 F.Supp.2d 615, 617 (E.D.Va.2003); Restatement, Agency 2d, § 357 (2003) (agent who intentionally or negligently fails to perform duties is not liable to a person whose economic interests are thereby harmed); *Rice v. Berkwood Corp.,* 56 Va. Cir. 493, *4 (Va. Cir. Ct.2001) (citing *Gerald M. Moore;* Restatement, Agency 2d, § 357). *See also Am. United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 927 (7th Cir.2003) (barring plaintiff's tort recovery from defendant's subcontractors under the economic loss doctrine). Here, no employee tortious conduct is alleged in the complaint that would give rise to liability independent of the fact that a contract exists between EMG and Maine Rubber. *See Juarez v. Chevron USA,* 911 F.Supp. 257, 259–60 (S.D.Tex.1995). *See also American Ins. Co. v. Material Transit, Inc.,* 446 A.2d 1101, 1104 (Del.Super.Ct.1982).

The plaintiff Maine Rubber shall show cause within two weeks why I should not grant summary judgment to Pfeffer on the tort counts.

---

service provided. I do not foreclose the possibility that in another case a complaint could be written (*e.g.,* possibly by alleging damage to other property) to fall outside the scope of the economic loss doctrine.

7. Such a relationship with equal bargaining power is quite different than one with a substantial difference in hierarchial status, like the relationship between a lawyer or accountant and his or her client, where the source of the duty is not defined by an arm's length contract. *Cf. Jin Ok Choi,* 63 F.Supp.2d at 884 (citing *Congregation of Passion, Holy Cross Province v. Touche Ross & Co.,* 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 514 (1994)). The relationship between Maine Rubber and EMG is not fiduciary (i.e., standing in a special relationship of trust) or extra-contractual in nature. EMG had no mandate to observe a level of professional competence that existed independently or outside the contractual language. *Cf. id.* Although a fiduciary relationship may occur under some factual circumstances, the summary judgment record does not establish a close relationship of trust and confidence between Maine Rubber and EMG that would compel Maine Rubber to rely heavily on judgments of EMG transcending the contractual expectations. *Cf. id.* at 884–85.

8. Contract law allows for foreseeable damages arising from the breach (though these may be limited by the contractual language). Tort law recovery may permit consequential damages. Which is greater depends upon the factual circumstances.

Accordingly, I GRANT summary judgment to the defendant EMG on Count I (negligence) and Count III (negligent misrepresentation) of the Amended Complaint. Count II, the breach of contract claim made against EMG alone, shall proceed.

## CONCLUSION

The defendant Maglietta's motion to dismiss is GRANTED.

The defendant Pfeffer's motion to dismiss is DENIED.

EMG's motion for partial summary judgment on Counts I and III of the Amended Complaint is GRANTED.

The plaintiff Maine Rubber is ordered to SHOW CAUSE by December 31, 2003, why I should not enter summary judgment to Pfeffer on Counts I and II.

So ORDERED.