85 P.3d 1099

JAZ, INC.; Jozac, Inc.; Zachariah Van-
derschyff; and Joyce Haverkate, Plain-
tiffs–Appellants/Cross–Appellees,

v.

Richard B. FOLEY dba Environmental
First, Defendant,

and

First Hawaiian Leasing, Inc., Defendant–
Appellee/Cross–Appellant.

No. 24699.

Intermediate Court of Appeals of Hawai'i.

Feb. 3, 2004.

Jerry M. Hiatt, David R. Harada–Stone, Kamuela, on the briefs, for plaintiffs-appellants/cross-appellees.

Robert D. Triantos, Kevin E. Moore (Carlsmith Ball LLP), Kailua Kona, on the briefs, for defendant-appellee/cross-appellant.

WATANABE, Acting C.J., FOLEY, J., and Circuit Judge SAKAMOTO in Place of BURNS, C.J., and LIM, J., Recused.

Opinion of the Court by FOLEY, J.

## I. INTRODUCTION

This case arises out of the purchase of a photo processing machine by Plaintiffs–Appellants/Cross–Appellees JAZ, Inc. (JAZ), JOZAC, Inc. (JOZAC), Zachariah Vanderschyff (Vanderschyff), and Joyce Haverkate (Haverkate) (collectively referred to as Jaz or Lessee). Jaz purchased the photo processing machine from Richard B. Foley dba Environmental First (Foley or Vendor) by way of an equipment lease through Defendant–Appellee/Cross–Appellant First Hawaiian Leasing, Inc. (First HI Leasing or Lessor).

Jaz appeals from the Amended Final Judgment filed October 30, 2001 (Amended Final Judgment) and the Findings of Fact, Conclusions of Law and Order filed February 12, 2001 in the Circuit Court of the Third Circuit (circuit court).[1] On appeal, Jaz contends the circuit court erred in holding: (1) Jaz had accepted the equipment; (2) the risk of loss had passed to Jaz; (3) First HI Leasing's premature payment to Vendor was not a material violation of the lease; and (4) Jaz

---

1. The Honorable Ronald Ibarra presided.

was obligated to begin lease payments when the equipment had not been delivered, installed, and inspected.

First HI Leasing appeals from the Amended Final Judgment and the "Order Granting in Part Defendant First Hawaiian Leasing, Inc.'s Motion for an Award of Attorney's Fees and Costs Filed February 22, 2001," filed March 13, 2001 in the circuit court. First HI Leasing contends the circuit court abused its discretion when it denied First HI Leasing reasonable attorney's fees based upon the amount of the Amended Final Judgment for prevailing on the claims of Jaz's complaint. First HI Leasing also contends it should have been awarded attorney's fees based upon the amount of the alleged damages sought at trial by Jaz.

We conclude the circuit court erred as contended by Jaz and therefore vacate the Amended Final Judgment and the Findings of Fact, Conclusions of Law and Order filed February 12, 2001.

## II. BACKGROUND

In 1998 JAZ owned and operated a photo processing store at the King's Shop complex in Waikoloa, Hawai'i. JOZAC owned and operated a store called "Zac's Photo" in the North Kona Shopping Center; the store provided photo processing, copying, and shipping services. Vanderschyff was the president of JAZ and JOZAC, and Haverkate was the vice president, secretary, and treasurer of JAZ and JOZAC.

On or about March 1998, Jaz sought to acquire a photo processing machine to expand their business. Jaz contacted Foley about purchasing a used Noritsu, model 2211, photo processing machine (Noritsu). Foley quoted the price of the Noritsu as $50,000.00. Jaz had previously purchased other photo processing equipment from Foley. Jaz contacted First HI Leasing to arrange a lease to acquire the Noritsu.

On April 8, 1998, First HI Leasing approved a lease application from JAZ. On April 13, 1998, First HI Leasing and JAZ executed Master Lease Agreement No. A3196 (Master Lease), a Non–Tax–Oriented Lease Addendum, an Addendum to Master Lease Agreement No. A3196, a UCC–1 Financing Statement, and Lease Schedule No. 66179. Vanderschyff and Haverkate, as individual guarantors, executed a Continuing Guaranty. On behalf of JOZAC, Haverkate executed a Certificate for Corporate Resolutions Authorizing Guaranty of Lease(s). On behalf of JAZ, Vanderschyff and Haverkate also executed an Officer's Certificate for Corporate Leasing Resolutions, and Vanderschyff executed a Negative Pledge Agreement.

On April 13, 1998, Vanderschyff and Haverkate, on behalf of JAZ, also signed, but did not date, an Acceptance Certificate.

On April 14, 1998, First HI Leasing prepared Purchase Order No. 11740 to Environmental Leasing and a check request in the amount of $50,065.00 payable to First Hawaiian Bank. On April 15, 1998, Vanderschyff, as President of JAZ, signed a Notice of Warranties in Connection with Finance Lease and, as President of JOZAC, signed the April 13, 1998 Continuing Guaranty, making JOZAC a guarantor.

At some point between April 13 and April 15, First HI Leasing filled in the date of April 15, 1998 on the Acceptance Certificate. On April 15, First Hawaiian Bank made a wire transfer of $50,000.00 to Environmental First based upon a Wire Transfer Customer Authorization signed by First HI Leasing.

Foley never delivered the Noritsu to Jaz. Jaz made monthly lease payments totaling $13,732.02 to First HI Leasing; the last payment was received by First HI Leasing on March 3, 1999. On August 10, 1998, Jaz filed a complaint against Foley and First HI Leasing. On May 17, 1999, First HI Leasing filed a counterclaim against Jaz and a cross-claim against Foley.

Default judgments against Foley were entered in favor of Jaz and First HI Leasing. After a bench trial, the circuit court awarded judgment against Jaz and in favor of First HI Leasing on Jaz's complaint and First HI Leasing's counterclaim. The circuit court awarded First HI Leasing attorney's fees on its counterclaim based on twenty-five percent of the judgment amount, costs, and interest.

## III. STANDARD OF REVIEW

### A. Findings of Fact (FoF) and Conclusions of Law (CoL)

■ We review a trial court's FOFs under the clearly erroneous standard.

An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

[State v. ]Kotis, 91 Hawai'i[, 319,] 328, 984 P.2d[, 78,] 87 [ (1999) ] (footnote omitted).

Hawai'i appellate courts review conclusions of law de novo, under the right/wrong standard. Under the right/wrong standard, this court examines the facts and answers the question without being required to give any weight to the trial court's answer to it.

Robert's Hawai'i School Bus, Inc. v. Laupahoehoe Transportation Co., Inc., 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999).

Leslie v. Estate of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks, citations, and brackets omitted; bracketed material in citation added).

## IV. DISCUSSION

### A. Introduction.

The central issue of this case is whether, under the Master Lease or Hawaii Revised Statutes (HRS) Article 490:2A (Leases), Jaz owes money to First HI Leasing for the Noritsu that was not delivered by Foley. There is a dispute as to whether goods can be accepted prior to delivery under the Master Lease or HRS Article 490:2A. There is also a dispute as to whether Jaz accepted the Noritsu under the terms of the Master Lease or HRS Article 490:2A. The parties also dispute whether Jaz owes rental payments to First HI Leasing under a "hell or high water" clause in the Master Lease or under HRS § 490:2A–407 (1993).

■ Hawaii Revised Statutes Article 490:2A, commonly referred to as the Uniform Commercial Code—Leases (UCC–Leases), was enacted to provide a comprehensive set of rules dealing with leases.[2] Parties are generally free to agree to any terms of a contract. City Express, Inc. v. Express Partners, 87 Hawai'i 466, 470 n. 4, 959 P.2d 836, 840 n. 4 (1998). The provisions of UCC–Leases apply to every "transaction, regardless of form, that creates a lease." HRS § 490:2A–102 (1993). Parties may agree to vary the provisions of HRS Article 490:2A in their lease.[3] Therefore this court will look to the terms of the Master Lease before applying the UCC–Leases provisions.

The Master Lease between Jaz and First HI Leasing stated in part:

1. MASTER LEASE AGREEMENT. First Hawaiian Leasing, Inc. (the "Lessor") hereby agrees to lease to the above-described Lessee, and the Lessee agrees to lease from the Lessor, all machinery, equipment and other personal property ("Equipment") described in the lease schedules ("Lease Schedules") executed concurrently herewith, or which may from time to time hereafter be executed by the Lessor and the Lessee and attached hereto

2. House Standing Committee Report No. 670 in 1991 House Journal at 1076 states in relevant part:
The provisions of this bill contain basic contract rules to govern leases of goods, including matters of offer and acceptance, statute of frauds, warranties, assignments of interest, and remedies upon breach of contract. The bill is a comprehensive set of rules dealing with every phase of leasing transactions and clarifies previous questions of security interests.

3. HRS § 490:2A–103(a)(4) (1993) states:

§ 490:2A–103 Definitions and index of definitions. (a) In this Article unless the context otherwise requires:
. . . .
(4) "Conforming" goods or performance under a lease contract means goods or performance that are in accordance with the obligations under the lease contract.

and incorporated by reference, upon the terms and conditions set forth in this Master Lease Agreement and the Lease Schedules. As used herein, the term "this Lease" includes this Master Lease Agreement and all Lease Schedules, and unless the Lessor has made an election to separate this Lease pursuant to paragraph 20 below, this Lease shall constitute one undivided lease of the Equipment. All of the terms, covenants and conditions of this Lease shall govern the rights and obligations of the Lessor and the Lessee, except as specifically modified in writing.

The terms of the Master Lease govern the rights and obligations of Jaz and First HI Leasing. The provisions of HRS Article 490:2A apply to the Master Lease in the absence of specific lease terms.

### B. Jaz did not accept the Noritsu by signing the Acceptance Certificate.

#### 1. Express acceptance by terms of Master Lease.

 Jaz contends it did not accept the Noritsu by signing the Acceptance Certificate. First HI Leasing contends that Jaz accepted the Noritsu before delivery by signing the Acceptance Certificate. The Acceptance Certificate stated in relevant part:

This Acceptance Certificate pertains to all of the Equipment described in the attached Exhibit A. The Equipment is covered by Lease Schedule No. 66179, which forms a part of Master Lease Agreement No. A3196 executed by the Lessor and the Lessee (hereinafter call [sic] the "Lease").

1. Acceptance of the Equipment. The Lessee hereby certifies to the Lessor that:

 (a) All of the Equipment has been delivered and installed; and

 (b) The Lessee has accepted the Equipment for purposes of commencing the Lessee's rental payment obligations under the Lease.

This acceptance of the Equipment is without prejudice to the Lessee's rights against the vendor or manufacturer of the Equipment for remedying any claimed defects.

The Master Lease stated in part:

8. INSPECTION AND ACCEPTANCE OF EQUIPMENT; REJECTION.

. . . .

(b) Upon the completion of its inspection of the Equipment, the Lessee shall promptly deliver to the Lessor an executed acceptance certificate (the "Acceptance Certificate") or reject the Equipment pursuant to paragraph 8(c) below.

... THE LESSEE'S ACCEPTANCE OF THE EQUIPMENT PURSUANT TO THIS PARAGRAPH 8(b) SHALL BE FOR THE SOLE PURPOSE OF COMMENCING THE LESSEE'S RENTAL PAYMENT AND OTHER OBLIGATIONS TO THE LESSOR UNDER THIS LEASE.

Generally, parties are free to agree to any terms of a contract, including the method of acceptance. *City Express,* 87 Hawai'i at 470 n. 4, 959 P.2d at 840 n. 4. First HI Leasing limited the purpose and scope of the Acceptance Certificate to commencement of rental payments and other obligations to First HI Leasing. Therefore, First HI Leasing may not use the Acceptance Certificate for the purpose of showing that Jaz accepted the Noritsu before delivery. Jaz's right to inspect the Noritsu is not an obligation to First HI Leasing because an inspection is for the benefit of Jaz.

In its answering brief, First HI Leasing cites *Stewart v. United States Leasing Corp.,* 702 S.W.2d 288 (Tex.App.1985), to support the argument that a signed acceptance certificate by a lessee is sufficient to show acceptance of goods before delivery. In *Stewart,* the Texas Court of Appeals ruled that a signed acceptance certificate was adequate to show acceptance by the lessee. The Texas Court of Appeals stated: "The consideration for the lease was not delivery of the copy machine but, instead, was United's purchase of the copy machine following receipt of the signed Acceptance Certificate." 702 S.W.2d at 290. Under the rationale of *Stewart,* when a lessee is obligated to provide an acceptance certificate before delivery and the lessor fails

to deliver the item, the lessee has no recourse because the lessee has already accepted the goods. The rationale of *Stewart* is unpersuasive because it fails to give plain meaning to the language of the acceptance certificate. The plain meaning of an acceptance certificate that states an item has been delivered and accepted means the lessor or vendor has actually delivered the item and the lessee has accepted the item. The instant case is also distinguishable from *Stewart* based on the language of the Master Lease. The acceptance certificate in *Stewart* stated that the lessee accepted the goods as satisfactory in all respects for the purpose of the lease. *Id.* Jaz did not make an acceptance for all purposes of the Master Lease.

Other cases dealing with signing an acceptance certificate before delivery are contrary to *Stewart*. In *Colonial Pacific Leasing Corp. v. J.W.C.J.R.*, 977 P.2d 541 (Utah Ct. App.1999), the Utah Court of Appeals stated that taking possession of the goods, signing a form acceptance before receipt of goods, and making a lease payment are not determinative of acceptance. *Id.* at 545. In *Moses v. Newman*, 658 S.W.2d 119 (Tenn.Ct.App. 1983), the Tennessee Court of Appeals held acceptance had not occurred despite purchaser's possession of the goods because affording a purchaser a reasonable opportunity to inspect does not imply possession. *Id.* at 121–22. In *Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns*, 710 S.W.2d 604 (Tex.Ct.App.1985), the Texas Court of Appeals held that there was no acceptance because the buyer must have a reasonable opportunity to inspect the goods. *Id.* at 608. In *Information Leasing Corp. v. GDR Investments, Inc.*, 152 Ohio App.3d 260, 787 N.E.2d 652 (2003), the Ohio Court of Appeals held that merely signing an acceptance certificate is not acceptance because the requirement of a reasonable time for inspection cannot be circumvented. *Id.* at 655–56. Under these cases, signing an acceptance certificate before delivery does not mean a lessee has accepted the goods. The lessee must have a reasonable time for inspection, which requires that lessee have actual possession of the goods.

There was no delivery of the Noritsu. Therefore, there was no reasonable time for inspection. Jaz did not accept the Noritsu in accordance with the terms of the Master Lease by signing the Acceptance Certificate because there was no delivery, no reasonable time for inspection of the Noritsu, and First HI Leasing had limited the purpose of the Acceptance Certificate.

### 2. Express acceptance under HRS § 490:2A–515.

■ First HI Leasing contends that Jaz accepted the Noritsu under HRS Article 490:2A by signing the Acceptance Certificate. Hawaii Revised Statutes § 490:2A–515 (1993) states in relevant part:

§ 490:2A–515 **Acceptance of goods.** (a) Acceptance of goods occurs after the lessee has had a reasonable opportunity to inspect the goods and:

(1) The lessee signifies or acts with respect to the goods in a manner that signifies to the lessor or supplier that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity; or

(2) The lessee fails to make an effective rejection of the goods (section 490:2A–509(b)).

Hawaii Revised Statutes § 490:2A–515 explicitly states two ways to accept goods. A lessee must have a reasonable amount of time to inspect the goods and either (1) act in a manner that signifies that the goods are conforming or (2) fail to reject the goods. There are no other ways to accept goods under HRS § 490:2A–515.

The Noritsu was not delivered. Therefore, Jaz did not have a reasonable time to inspect the goods. First HI Leasing did not show that Jaz agreed to accept the Noritsu before delivery under HRS § 490:2A–515.

### 3. Implied acceptance by action.

■ First HI Leasing contends that, despite the lack of compliance with HRS § 490:2A–515 or the terms of the Master Lease, Jaz accepted the Noritsu before delivery because prepayment was required. The

language in the Master Lease did not state that any prepayment for the Noritsu meant Jaz accepted the Noritsu. First HI Leasing's Purchase Order No. 11740 stated in relevant part:

3. Inspection. All of the Equipment described herein are subject to inspection by the Purchaser or the Lessee upon arrival at the address specified on the reverse side hereof, even though payment may have been made for the same prior to such arrival. If, upon completion of such inspection, it is determined that the Equipment does not conform to the requirements of this purchase order, the Purchaser and/or the Lessee shall be entitled to reject the nonconforming or defective Equipment and return the same to the Vendor, whereupon the Vendor shall refund to Purchaser any part of the purchase price theretofore paid for such Equipment, together with all charges incurred by the Purchaser or the Lessee for transportation, handling, and storage.

First HI Leasing's purchase order to Foley specifically stated that the equipment was subject to inspection even if payment was made prior to delivery. Lease Schedule No. 66179 stated in relevant part:

8. INSPECTION PERIOD: The Lessee shall have a period of three (3) day(s) after delivery and installation to inspect the Equipment unless the time for inspection is extended with Lessor's approval.

First HI Leasing gave the right of inspection to Jaz even though prepayment was required. First HI Leasing's Lease Schedule and Purchase Order show that Jaz had a right to inspect the equipment after delivery. Prepayment by First HI Leasing did not require Jaz to accept the Noritsu before delivery.

**C. Jaz had no duty to make rental payments.**

■ Jaz contends it is not responsible for any losses under the terms of the Master Lease. First HI Leasing contends Jaz is responsible for any such losses. The Master Lease stated in part:

12. LOSS, DAMAGE TO OR DESTRUCTION OF EQUIPMENT.

(a) The Lessee shall bear the risk of loss, damage to or destruction ("Loss") of the Equipment, whether resulting from fire, theft, collision, governmental action or any cause whatsoever, and regardless of whether the Loss is covered by insurance or not, from the date of execution of the Lease Schedule (or if the Equipment is ordered from a Vendor, then from the date risk of loss passes from the Vendor) until the Equipment is returned to the Lessor upon the expiration of the Rental Term or earlier termination of this Lease.

(b) ANY LOSS OF THE EQUIPMENT SHALL NOT RELIEVE THE LESSEE OF ANY OBLIGATIONS UNDER THIS LEASE, INCLUDING ITS OBLIGATION TO PAY RENT, UNLESS AND UNTIL THE LESSEE'S OBLIGATIONS ARE TERMINATED BY THE LESSOR PURSUANT TO PARAGRAPH 12(d) BELOW.

Under the terms of the Master Lease, Jaz bears the risk of loss for any cause whatsoever from the date the risk passes from Vendor to Jaz. The Master Lease does not specify when the risk of loss passes from Vendor to Jaz, and thus HRS § 490:2A–219 (1993) will be applied. Hawaii Revised Statutes § 490:2A–219 states in relevant part:

§ 490:2A–219 Risk of loss. (a) Except in the case of a finance lease, risk of loss is retained by the lessor and does not pass to the lessee. In the case of a finance lease, risk of loss passes to the lessee.

(b) Subject to the provisions of this Article on the effect of default on risk of loss (section 490:2A–220), if risk of loss is to pass to the lessee and the time of passage is not stated, the following rules apply:

(1) If the lease contract requires or authorizes the goods to be shipped by carrier:

(i) And it does not require delivery at a particular destination, the risk of loss passes to the lessee when the goods are duly delivered to the carrier; but

(ii) If it does require delivery at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the lessee when the goods are there duly so tendered as to enable the lessee to take delivery.

(2) If the goods are held by a bailee to be delivered without being moved, the risk of loss passes to the lessee on acknowledgment by the bailee of the lessee's right to possession of the goods.

(3) In any case not within paragraph (1) or (2), the risk of loss passes to the lessee on the lessee's receipt of the goods if the lessor, or, in the case of a finance lease, the supplier, is a merchant; otherwise the risk passes to the lessee on tender of delivery.

 First HI Leasing cannot show the risk of loss passed from Vendor to Jaz under HRS § 490:2A–219 because the Noritsu was never delivered to Jaz. "[I]f the parties do not agree on when risk of loss will pass, section 2A–219(2) allocates risk in rules based on the mode of physical transfer of the goods, generally allowing the risk to remain on the party who had control over the goods at the time of the loss." 3A William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 2A–219 at 355 (1993). "[A]bsent a default by either party, the risk of loss passes to the lessee when the lessor tenders the goods; that is, when it completes its obligation to physically deliver the goods." 19 Richard A. Lord, *Williston on Contracts* § 53:38 at 158 (4th ed.2001). The risk of loss in a finance lease passes to the lessee upon the lessee's receipt of the goods if, as here, the supplier is a merchant. *Id.* at 159.

First HI Leasing contends that the risk of loss may not have passed to Jaz, but it does not fall on First HI Leasing. First HI Leasing erroneously relies on HRS § 490:2A–220 (1993) to place the risk of loss on Foley, while requiring Jaz to make rental payments. Hawaii Revised Statutes § 490:2A–220 states in relevant part:

§ **490:2A–220 Effect of default on risk of loss.** (a) Where risk of loss is to pass to the lessee and the time of passage is not stated:

(1) If a tender or delivery of goods so fails to conform to the lease contract as to give a right of rejection, the risk of their loss remains with the lessor, or, in the case of a finance lease, the supplier, until cure or acceptance.

There must be a tender or delivery of goods under HRS § 490:2A–220 for the risk of loss to pass to Jaz in the case of a finance lease. It was undisputed that the Noritsu was not delivered to Jaz. There was no evidence that there was a tender of the Noritsu by Foley to Jaz. Therefore the risk of loss is not on Foley.

First HI Leasing had the option of executing a recourse agreement [4] or seeking accep-

---

4. First HI Leasing's use of recourse agreements was explained by First HI Leasing Vice President Brian Y.C. Lau in this exchange between Mr. Lau and Jaz's counsel:

Q. [Jaz's counsel] Now let's go to this transaction and get into it in a little more detail, Mr. Lau. You have available to you as one of the tools which First Hawaiian Leasing uses in situations where advance funding is wanted, you have a document called a "Recourse Agreement"; is that correct?

A. [Mr. Lau] Yes.

Q. Can you just explain to the Court what a recourse agreement is, please?

A. A recourse agreement is an instruction from the lessee or the customer to pay vendor a dollar amount.

Q. And to pay early or outside of the confines of the lease; is that correct?

A. It could be paid at any time. It's identical to a note.

Q. But it's—if I understood your deposition testimony and the way these deals work, it's a way to get money to the vendor outside of the lease which acknowledges cash is going to the vendor before the lease commences. It's a tool that can be used. Is that right?

A. It's a tool that can be used.

Q. Okay. Now, recourse agreement—there's a form for that in your files like these other forms that were used in this case; is that correct?

A. It's in our computer bank, yes.

Q. And it would be an easy thing to generate one for a transaction like this?

A. We could produce one, yes.

Q. And no recourse agreement was produced or ever signed in this case; correct?

A. Correct.

tance by Jaz in order to avoid any risk of loss. First HI Leasing did not arrange for a recourse agreement, which would have put the risk of loss for prepayment on Jaz. First HI Leasing relied on the Acceptance Certificate. First HI Leasing failed to secure Jaz's acceptance by limiting the purpose of its own acceptance certificate and by failing to comply with HRS § 490:2A-515.

First HI Leasing must bear the risk of loss because it made payment to Foley before delivery of the Noritsu and without acceptance by Jaz.

**D. Jaz's irrevocable promise to make the payments under HRS § 490:2A-407 did not apply because Jaz did not accept the Noritsu.**

 Jaz contends it does not owe rental payments because the irrevocable promise to make the payments under HRS § 490:2A-407 (1993) does not apply. First HI Leasing argues that Jaz's promise to make rental payments is irrevocable under HRS § 490:2A-407, which provides in relevant part:

> **§ 490:2A-407 Irrevocable promises: finance leases.** (a) In the case of a finance lease that is not a consumer lease the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods.

Acceptance of goods is a requirement for HRS § 490:2A-407 to apply. Jaz did not accept the Noritsu, so HRS § 490:2A-407 does not apply. Jaz does not owe rental payments for the Noritsu under HRS § 490:2A-407 because Jaz did not accept the Noritsu.

**E. First HI Leasing's attorney's fees and costs.**

 First HI Leasing contends (1) the circuit court abused its discretion when it denied First HI Leasing reasonable attorney's fees based upon the amount of the Amended Final Judgment for prevailing on the claims of Jaz's complaint, and (2) First HI Leasing should have been awarded attorney's fees based upon the amount of the alleged damages sought at trial by Jaz. The circuit court erred in granting judgment for First HI Leasing on the counterclaim, and no costs or attorney's fees should have been awarded to First HI Leasing. Thus the circuit court's award of partial fees and costs to First HI Leasing was also in error.

## V. CONCLUSION

The "Order Granting in Part Defendant First Hawaiian Leasing, Inc.'s Motion for an Award of Attorney's Fees and Costs Filed February 22, 2001," filed March 13, 2001 is reversed. The Amended Final Judgment filed October 30, 2001, and the Findings of Fact, Conclusions of Law and Order filed February 12, 2001 are vacated, and this case is remanded to the circuit court for further proceedings consistent with this opinion.