2005 ME 116

**David GRAVES et al.**

v.

**S.E. DOWNEY REGISTERED LAND SURVEYOR, P.A. et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 18, 2005.

Decided: Nov. 22, 2005.

Edmond J. Bearor, Timothy A. Pease (orally), Rudman & Winchell, Bangor, for plaintiffs.

Peter R. Roay (orally), Robert W. Laffin Jr., Roy, Beardsley, Williams & Grainger, L.L.C., Ellsworth, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] S.E. Downey Registered Land Surveyor, P.A., Patrick Downey, and Stephen Downey (S.E. Downey) appeal from a judgment entered after a jury-waived trial in the Superior Court (Hancock County, *Hjelm, J.*) in favor of David and Katherine Graves. The Downeys assert that the court erred in finding that they were negligent in surveying the Graveses' land and that the negligence caused the damages.[1] We affirm the judgment.

## I. FACTUAL BACKGROUND

[¶ 2] The Graveses own land in Bar Harbor that is bordered on the east by Acadia National Park and on the north by land controlled by the Park. They decided to divide the land into three lots. On their behalf, their contractor hired S.E. Downey to survey the land.

[¶ 3] S.E. Downey is a professional service corporation engaged in the business of surveying. Stephen Downey, a registered land surveyor, is the president and sole shareholder, and his son Patrick is an employee who, under the supervision of Stephen, did most of the work on the survey of the Graveses' land.

[¶ 4] After the survey was completed, the Graveses' contractor began construction of a house on the northern most lot. The construction included improving a road, installing a septic system, drilling a well, and providing power. During con-

struction, a person from the National Park Service informed the Graveses that the house was north of their property line and was located on land of another where the Park had authority to prohibit construction. After unsuccessful negotiations with Park officials, the Graveses moved the house onto land south of the disputed northern boundary at a cost of $110,589.

[¶ 5] The Graveses then filed a complaint against S.E. Downey for breach of contract and professional negligence. The court heard from an expert witness who testified that S.E. Downey did not "exercise the skill, care and diligence required of members of the surveying profession" and did not "meet the standards of local practice exercised by reasonably prudent practitioners providing land surveying services in the Hancock County area." The expert listed deficiencies in the S.E. Downey survey including "[r]eliance on extrinsic evidence to the exclusion of the direct record evidence of the boundary." The expert also testified that he was baffled at S.E. Downey's conclusion that there was a gap between the southerly boundary of the Graveses' land and the northerly boundary of MDI High School when every deed in the chain of title stated they were contiguous. The expert concluded: "The monuments in the Graveses' deed are clear, they're controlling, and the determination reflected by the Downey survey is inconsistent with all of the rules of evidence and rules of construction as far as I can determine."

[¶ 6] The court also heard from Patrick and Stephen Downey, as well as other witnesses, and the court examined the deeds, maps, and other documents. The court reviewed the predecessor to the cur-

---

1. Although S.E. Downey also claims that the court erred in not requiring adjoining property owners to be joined as indispensable parties, S.E. Downey failed to preserve this issue, and we do not entertain it.

rent Standards of Practice contained in the Department of Professional and Financial Regulation, Board of Licensure for Professional Land Surveyors.[2] In its findings the court recited several deficiencies in the Downey survey and discussed them at length.[3] The court concluded:

The court has noted several material flaws in the survey work performed by Patrick Downey and directly supervised by Stephen Downey, which work was then incorporated into the survey opinion attributable to both Patrick and Stephen Downey. The most significant of these problems was the failure to use the northern boundary of the Tracy property as the direct means to establish the location of the southerly line of the [Graveses'] property. This constituted a deviation from the standard of care and conduct that an ordinarily competent surveyor is expected to meet. It is also a breach of at least one of the standards of care set out in the rules that govern the quality of surveyors' work. [citation omitted] (requiring a surveyor to conduct a careful evaluation of the subject before expressing a professional opinion).

[¶ 7] The court also found that S.E. Downey's conduct was the legal cause for the Graveses' damages. The court stated:

Although the [Downeys] argue that the [Graveses] acted prematurely when they moved the house, the evidence establishes that the Park gave them no choice. More importantly, the evidence establishes that, due to the flawed information proved by the [Downeys], the house in fact was built on property that the [Graveses] did not own.

[¶ 8] The court granted judgment for the Graveses in the amount of $110,589, plus interest and costs. S.E. Downey appeals, primarily claiming that the evidence was not sufficient for a finding of negligence or causation.

## II. DISCUSSION

[¶ 9] Whether a party owes a duty of care is a question of law, while breach of the duty and causation are questions of fact. *Welch v. McCarthy*, 677 A.2d 1066, 1069 (Me.1996). We review questions of law de novo and questions of fact for clear error. *Wells v. Powers*, 2005 ME 62, ¶ 2, 873 A.2d 361, 363. Because S.E. Downey did not bear the burden of proof at trial on the issues of breach and causation, we review the evidence, and inferences that may be drawn therefrom, in the

2. Although the current regulations supplant the 1991 version given to the trial court as an exhibit, the substantive portions of the regulations referred to in the court's findings remain the same. *See* 7 C.M.R. 02 360 090 (2001).

3. The monuments in the Graveses' deed included the boundaries of the adjoining parcels and the Old Sled Road. S.E. Downey's and the Graveses' expert agreed that the Old Sled Road formed the easterly boundary of the Graveses' land. The southern line is described in the deed as the north boundary of the Tracy property, now the MDI High School property. S.E. Downey did not locate and use this boundary line. Instead, the Downey survey used an old metal fence that had been pointed out by the contractor even though S.E. Downey had no reason to believe that the contractor had information about the significance of the fence. S.E. Downey also resorted to the deed of another parcel of land one-half mile away from the Graveses' land and extended boundary lines from that deed. The court found it was not reasonable to rely on this deed and extend lines as S.E. Downey did. The court also found that S.E. Downey's reliance on the distance call of the Old Sled Road was flawed. Although the Old Sled Road had value as a monument, the court found that the distance call should have been given less significance than other monuments such as the northern line of the MDI High School property.

light most favorable to the trial court's judgment to determine whether competent evidence supports the judgment. *See Pratt v. Spaulding*, 2003 ME 56, ¶¶ 10–13, 822 A.2d 1183, 1186.

[¶ 10] We have not had the occasion to state the standard of care owed by a land surveyor.[4] Medical and legal malpractice actions are analyzed according to tort law principles instead of contract law, and in those cases liability is predicated on " 'deviation from the professional standard of care.' " *Johnson v. Carleton*, 2001 ME 12, ¶ 5 n. 3, 765 A.2d 571, 573 (quoting *Woolley v. Henderson*, 418 A.2d 1123, 1135 (Me.1980)). We have said that "[s]tandards for demonstrating the elements of professional negligence do not differ from profession to profession." *Merriam v. Wanger*, 2000 ME 159, ¶ 17, 757 A.2d 778, 782.[5] The plaintiff in a professional negligence action must establish the appropriate standard of care, demonstrate that the defendant deviated from that standard, and prove that the deviation caused the plaintiff's damages. *Forbes v. Osteopathic Hosp. of Me., Inc.*, 552 A.2d 16, 17 (Me. 1988). In medical malpractice cases the appropriate standard is the care that an ordinarily competent physician would provide under like circumstances. *McLaughlin v. Sy*, 589 A.2d 448, 452 (Me.1991). Similarly, the appropriate standard of care in legal malpractice cases is the skill, prudence, and diligence that would be used by attorneys of ordinary skill and capacity. *Schneider v. Richardson*, 411 A.2d 656, 657 (Me.1979).

[¶ 11] The duty of care that the Superior Court imposed in this case required the Graveses to demonstrate that S.E. Downey's work on the survey was below that of an ordinarily and reasonably competent land surveyor in like circumstances. Courts in other jurisdictions have articulated the duty of care of land surveyors in similar ways. For example, in West Virginia a surveyor is held to the standard of care that a "reasonably prudent surveyor" would have applied with regard to the same project. *Capper v. Gates*, 193 W.Va. 9, 454 S.E.2d 54, 60–61 (1994). Both Maryland and North Carolina state that a surveyor must "exercise that degree of care which a surveyor of ordinary skill and prudence would exercise under similar circumstances." *Reighard v. Downs*, 261 Md. 26, 273 A.2d 109, 112 (1971); *Associated Ind. Contractors, Inc. v. Fleming Eng'g, Inc.*, 162 N.C.App. 405, 590 S.E.2d 866, 870 (2004) (providing nearly identical language). We agree with the Superior Court that the duty of care a land surveyor is obligated to provide is that degree of care that an ordinarily competent surveyor would exercise in like circumstances.

[¶ 12] The evidence fully supports the court's finding that S.E. Downey breached this duty of care. Although S.E. Downey compares this case to a common boundary dispute in which a court hears conflicting opinions of two surveyors, the comparison is not appropriate. We agree with S.E. Downey that simply because a court agrees with one surveyor more than

---

4. The Legislature recognizes that there is a cause of action against land surveyors for professional negligence in that there is a statute of limitations for such actions. 14 M.R.S.A. § 752–D (2003); *see also Johnston v. Dow & Coulombe, Inc.*, 686 A.2d 1064 (Me. 1996) (applying the statute of limitations to bar an action for negligence against a land surveyor).

5. *But see Walter v. Wal–Mart Stores, Inc.*, 2000 ME 63, ¶¶ 14, 16, 748 A.2d 961, 967–68 (applying to a pharmacist the traditional standard of care as enunciated in a 1910 case, but suggesting that the pharmacist would also be liable under the more modern standard, which is the skill and diligence exercised by similar professionals).

another surveyor does not mean that one has committed professional negligence. However, a boundary dispute case and a professional negligence case are not the same because in the latter there must be evidence that the surveyor deviated from the standard of care. In this case the court did not merely disagree with S.E. Downey's methods or results; it concluded, based on the evidence, that S.E. Downey had not lived up to its professional obligation. The court made that determination after a thorough review of S.E. Downey's method and results and, importantly, after hearing from an expert as to how and why the S.E. Downey survey fell below the standard of care.

[¶ 13] The evidence was sufficient to establish S.E. Downey's professional negligence, and it was sufficient to establish that the negligence proximately caused the Graveses' damages. The court awarded damages to the Graveses in the amount that it cost them to move the house that they had constructed on the land that had been identified erroneously as land they owned. S.E. Downey contends that the Graveses failed to prove who owned the land on which their house was constructed and failed to prove that the Park had a legal right to force them to move the house. However, such proof was unnecessary in light of the evidence that Park officials told the Graveses that they had to move the house, the Graveses were unsuccessful in negotiating with the Park, and the house was built on land that the Graveses did not own. As the trial court noted, the Graveses were not required to wait until the Park sought remedies in court against them.

The entry is:

Judgment affirmed.