STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-07-381

KATHERINE MORGAN,

        Plaintiff,

    v.

CRITERIUM-MOONEY                                  **ORDER**
ENGINEERS, et al.,

        Defendants


Defendants Criterium-Mooney Engineers' and Colin and Nancy Sargent's

motions for summary judgment are before the Court. The Court grants judgment

for Criterium-Mooney on plaintiff Katherine Morgan's claims for intentional

misrepresentation and violations of Maine's Unfair Trade Practices Act because

the plaintiff has failed to make her prima facie case, and on Morgan's breach of

contract claim as a matter of law. The Court denies Criterium-Mooney summary

judgment on Morgan's negligence claim because the plaintiff has generated

triable issues of fact sufficient to survive this motion, and finds the liability-

limitation clause in the parties' contract void against public policy. The Court

denies the Sargents' motion on all claims.


## BACKGROUND

Criterium-Mooney is an engineering firm that performs pre-purchase

residential home inspections. In 1997, Colin and Nancy Sargent purchased a

residential home at 114 Baxter Boulevard in Portland, Maine. At that time,


1

Criterium-Mooney Engineers inspected the property and issued a report suggesting optional improvements the Sargents could make to the home.

The Sargents acted on this report and upgraded the building by installing a new slate roof, flashing, and ridge vent; installing new wooden gutters; installing a new furnace and boiler; installing new custom windows throughout the home; and removing asbestos from the existing furnace. The Sargents also had an electrician review the wiring in the house, replace the existing fuses with circuit breakers, and install GFCI outlets.

The Sargents never observed any signs of moisture in the home's attic, but did experience what they characterized as "minor water seepage" in the basement. At one point the Sargents noticed a small amount of water coming into the home through the fireplace, and they had their roofing contractor investigate. The roofer could not locate any problems, but as a preventative measure the Sargents installed a liner in the chimney and had the exterior masonry facing the street water-sealed. They disclosed this information to plaintiff Katherine Morgan.

In 2001 the Sargents listed the home for sale and hired Adele Aronson as their agent. Morgan, an Administrative Judge for the Social Security Administration, visited the residence on three occasions between 2001 and 2003. In 2003 she became seriously interested in purchasing the property and visited it repeatedly. Her own real-estate broker accompanied her during each visit. Morgan hired Criterium-Mooney to conduct a standard pre-purchase home inspection in October of that year. Their inspection contract defined a "Standard Inspection," as:

> A limited visual inspection to identify significant deficiencies and/or repairs needed in the major systems (structural, heating, air

2

conditioning, plumbing, electrical, roof, exterior) as well as provide a general understanding of the property. This is a limited inspection based on visible evidence readily available during the inspection (without moving furnishings, removing finishes, etc.) and is the opinion of the engineer performing the inspection. **It is not a guarantee or warranty regarding the condition of this building. Our maximum liability for loss suffered by the client due to any cause is limited to our inspection fee.**

The inspection fee was $590.00. Other more comprehensive inspection options with correspondingly higher liability caps were available, but Morgan declined them.

The engineer from Criterium-Mooney spent at least one hour inspecting the home, and was accompanied by Morgan and her broker through the basement, kitchen, living room, and other areas. Neither Morgan nor her broker saw anything that caused them concern during this or any other visit, including a final pre-closing walk-through performed after the inspection.

On October 22, 2003, Criterium-Mooney completed a Home Inspection Report based on the engineer's visit to the home. The report identified "evidence of some water seepage in the basement," which "did not appear to be extensive." It stated that "only a monitoring over an extended period of time will help understand exactly how much [basement water] seepage might occur." The plumbing was identified as being in "good to fair condition" and the possibility of future repairs was expressly addressed. The report also noted that some walls were probably not insulated. In its final assessment, the report concluded that the home was "in average condition when compared to others of similar age and construction type."

Morgan purchased the home and took up residence in November 2003. On January 1, 2004 a sewer pipe burst in the home's basement, and was repaired by Pine State Plumbing. Later that winter the basement of the house experienced

3

significant flooding through the foundation walls. Morgan contracted David Dalessandri of Concrete Prescriptions, LLC, to prevent the water intrusion, but his efforts were only partially successful. Morgan waited approximately one year to have follow-up work performed. That year Morgan also had shutters installed on the interior of the home's windows.

In 2005 Morgan's attorney sent a letter to the Sargents, Criterium-Mooney, and the real estate agents demanding $3,000.00 compensation for the water intrusion. The letter alleged that both the Sargents and Criterium-Mooney had "minimized" the extent of the water problems in the basement, but it did not mention water intrusion in any other portion of the home.

Morgan claims she initially noticed evidence of water entering the first floor of the residence between 2004 and 2006, though her testimony on this point has been inconsistent. She definitely noticed water entering the home around the first floor windows in 2005. This water eventually damaged the shutters that she had installed the previous year. In 2006 Morgan noticed significant problems caused by water intrusion in the aboveground floors of the home, including crumbling, cracking, and peeling paint and plaster. Finally, in May 2006 a water pipe burst in Morgan's basement. Pine State Plumbing repaired the burst.

In 2007 Morgan made an insurance claim for the water damage to her home. Her insurer sent engineer James Thibodeau to inspect the damage, and subsequently denied coverage. The insurer later released Thibodeau to testify as Morgan's expert witness. On July 9, 2007 Morgan filed her complaint against Criterium-Mooney alleging breach of contract, negligent misrepresentation, fraudulent misrepresentation, claims under Maine's Unfair Trade Practices Act (the "UTPA"), 5 M.R.S.A. § 205-A et seq. She later amended her Complaint to

4

join the Sargents and their realtors as defendants. The Sargents stand accused of fraudulent or negligent misrepresentation, and Morgan seeks punitive damages.

On March 10, 2009 all claims relating to the realtors were dismissed with prejudice. On August 7, 2009 the Sargents filed their motion for summary judgment. Criterium-Mooney filed its own motion on August 20, 2009.

## DISCUSSION

The gist of Morgan's complaint is that the Sargents and Criterium-Mooney conspired to hide severe structural problems in the home to induce Morgan to purchase the property. Absent actual intent on the part of either or both parties, Morgan alleges that the Sargents and Criterium-Mooney negligently failed to discover or disclose defects that they were duty-bound to reveal. But for this negligence Morgan claims she would not have purchased the home and would not be facing the massive repairs she says are necessary.[1] Specific to Criterium-Mooney, Morgan alleges that the home-inspection contract was breached through the engineer's negligence and that Criterium-Mooney's actions amount to an unfair or deceptive business practice.

Both defendants attack Morgan's evidence as insufficient to make a prima facie case for her claims. The Sargents strenuously claim that they never experienced water intrusion other than what they disclosed prior to sale. Criterium-Mooney argues that it competently performed its inspection contract and attacks the legal applicability of Morgan's tort claims. In the alternative, Criterium-Mooney argues that its liability is contractually limited to $590.00.

---

[1] Morgan has obtained a repair estimate for $484,723.00, which includes allowances for landscaping, new cabinets, new radiators, new window treatments, and a new fence.

5

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A motion for summary judgment must be supported by citations to record evidence of a quality that would be admissible at trial. *Id.* at ¶ 6, 770 A.2d at 656 (citing M.R. Civ. P. 56(e)). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)).

I.  **Morgan's Evidence**

Morgan admits that she has no direct evidence to support her allegations. Aside from the circumstantial evidence of the water intrusion itself, Morgan relies primarily on her contractors' affidavits to support her claims. The first contractor is James Thibodeau, a professional engineer who first inspected the property in 2007 on behalf of Morgan's insurer.

Thibodeau testified that he "observed past and ongoing water infiltration issues in the basement and living areas," including "apparent and obvious former water damage patch locations in the plaster ceilings, walls, and crown trim." He also observed "evidence of pre-existing wood rot and deterioration and mold growth on some of the wood finishes in the basement" consistent with long-term water intrusion. Based on the above, Thibodeau testified that the home had probably experienced significant water intrusion before Morgan's purchase,

6

including during the Sargents' ownership, and that efforts were made "to conceal the underlying water damages."

Morgan also relies on David Dalessandri of Concrete Prescriptions, LLC, who attempted to address the water seepage in the basement sixth months after Morgan moved in. Dalessandri is the owner and technician of Concrete Prescriptions and has been in the waterproofing business for eight years. He testified that he discovered nine cracks in the home's foundation walls and an area of poorly mixed concrete, as well as water stains on the walls and floors. In the cracked area "the walls were coated with mortar and/or plaster and covered with paint," which was "flaking off due to the moisture coming through the foundation." Dalessandri also observed "rotting framing" in the basement. In his opinion the basement had experienced recurring water infiltration prior to Morgan's purchase.

Morgan's final expert is Arthur Jacobson, owner of Ste-Mar, Inc. Jacobson and Ste-Mar manufactured and installed new custom windows for the home in August 2003, when it was still owned by the Sargents. Jacobson has been in the home-remodeling business for forty years. He testified that while at the property he observed paint peeling on the ground-floor plaster around the fireplace, which he believes was evidence of water damage. Jacobson also claimed to have seen workers repairing plaster in the living room near the chimney. In Jacobson's opinion the Sargents had experienced water infiltration and were attempting to repair the damage it had caused.

The defendants argue that this evidence is speculative and inadmissible, leaving Morgan with no adequate basis for her claims. While it is true that the Rules of Evidence restrict opinion testimony by lay witnesses, Morgan's

7

witnesses have sufficient experience and expertise in the trades to qualify as experts in this case. M.R. Evid. 701, 702. As experts they may provide admissible opinion testimony, including inferences going to the ultimate issues in the case. M.R. Evid. 702, 704. Morgan's evidence is thus admissible and may validly generate issues of fact. However, whether this evidence establishes a prima facie case for her claims is a separate question.

## II. Claims Against Criterium-Mooney

Morgan is suing Criterium-Mooney for breach of contract, negligent misrepresentation, fraudulent misrepresentation, and violations of the UTPA. Criterium-Mooney argues that Morgan has failed to make out a prima facie claim, that its liability is limited to the contract price, that the economic loss doctrine bars Morgan's tort claims, and that the UTPA does not apply to professional engineers.

### A. Contract, Negligence, and the Economic Loss Doctrine

Morgan's contract with Criterium-Mooney required the professional engineering firm to conduct a "limited visual inspection to identify significant deficiencies and / or repairs needed in the major systems" of the home "in accordance with the Standards of Practice of the National Academy of Building Inspection Engineers (NABIE) . . . ." Criterium-Mooney allegedly overlooked evidence of material structural defects during the inspection and consequently issued a false assessment in its report. Morgan pleads two causes of action stemming from this episode: breach of contract and negligent misrepresentation.

Generally "a mere breach of contract is not actionable as a tort." Horton & McGehee, *Maine Civil Remedies* § 15-2(b)(2) (4th ed. 2004). Contractual liability is rooted in consensual relationships between parties, while tort "liability is

8

grounded upon the *status* relationship between the parties." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 938 (Me. 1982) (citing *McNally v. Nicholson Manufacturing Co.*, 313 A.2d 913, 916–17, 923 (Me. 1973). Notwithstanding their different predicates for liability, "[h]owever, the circumstances surrounding the contract may give rise to an independent duty to exercise due care or similar duty in tort, in which case a breach may be actionable under both tort and contract theory." Horton & McGehee, *supra* at § 15-(b)(2).

The economic loss doctrine is a new incarnation of this old principle. The doctrine "prohibits recovery in tort where a product has damaged only itself . . . and, the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992) (cited with approval in *Oceanside at Pine Point Condominium Owners Assoc. v. Peachtree Doors, Inc.*, 659 A.2d 267, 270 n.4 (Me. 1995)). The rationale underlying the doctrine is that where a product damages only itself, it merely means that a "customer has received 'insufficient product value.'" *Peachtree*, 659 A.2d at 270 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986)) (internal quotations omitted). The only duties breached are those arising from the parties' consensual, transactional relationship.

Criterium-Mooney argues that the economic loss doctrine bars Morgan's tort claims in this case because a contract governed the parties' relationship and Morgan only alleges economic losses stemming from its breach. The Law Court adopted the economic loss doctrine in the context of product liability in *Oceanside at Pine Point Condominium Owners Assoc. v. Peachtree Doors, Inc.*, 659 A.2d 267, 270 (Me. 1995). In that case the doctrine precluded the purchaser of a home from bringing a tort action to recover economic losses caused by defective windows.

9

*Id.* at 270–71. The Court reasoned that the product purchased by the homebuyer was the home, the home had only damaged itself, and liability was properly addressed under a contractual warranty theory rather than tort. *Id.* at 271.

While the economic loss doctrine is well established in the field of product liability, the law is unsettled regarding whether or to what extent the doctrine applies to service contracts. In *Peachtree* the Law Court did not hint at its position on the issue. This silence has left considerable doubt about the doctrine's boundaries in Maine. The Superior Court has applied it to bar tort actions in cases where parties contracted for the design, manufacture, or maintenance of a product. *See Maine-ly Marine Sales & Serv., Inc. v. Worrey,* 2006 Me. Super. LEXIS 79 (Apr. 10, 2006) (negligent winterization of boat engine); *Bayreuther v. Gardner,* 2000 Me. Super. LEXIS 140 (June 21, 2000) (negligent design and inspection of a septic system); *L.L. Bean, Inc. v. U.S. Mineral Prods. Co.,* 1999 Me. Super. LEXIS 323 (Dec. 3, 1999) (design and installation of defective fireproofing material). However, the Superior Court did not apply the economic loss doctrine to an inspection contract in *Pendleton Yacht Yard, Inc. v. Smith,* 2003 Me. Super. LEXIS 49 (Mar. 24, 2003).

In *Pendleton* the defendant was hired to perform a pre-purchase inspection of a boat's hull. *Id.* at ** 1–2. The defendant did inspect the hull, but went on to examine other portions of the vessel and rendered factually incorrect opinions about its worth and condition. *Id.* The court analyzed prior Maine case law and ultimately declined to apply the doctrine because it believed that "the better view [was] found in *International Ore & Fertilizer Corp. v. SGS Control Services, Inc.,* 743 F. Supp. 250 (D.C.N.Y. 1990)." *Id.* at ** 12–13.

In *SGS* the plaintiff alleged that a marine inspection company hired to inspect a cargo hold negligently overlooked certain defects. *Id.* at * 13. The *SGS* court reasoned that while mere breach of contract was generally not actionable in tort, "if the conduct of one party would constitute a tort in the absence of the contract, then that cause of action is not extinguished simply because some aspects of the relationship between the parties happen also to be governed by an independent agreement." *Id.* at ** 13–14 (quoting *SGS*, 743 F. Supp. at 258) (quotations omitted). The *Pendleton* court applied *SGS* to the facts before it and determined that the defendant hull-inspector would have been held to a professional standard of care imposed by law independent of his contract, and so notwithstanding the contract the plaintiff could sue for professional negligence. *Id.* at * 15.

The District of Maine took the doctrine one step further by applying it to a professional service contract that did not "result in the creation of a tangible object." Kurt Olafsen et al., *Tort Killer: The Applicability of the Economic Loss Doctrine to Service Contracts*, 20 Me. Bar J. 100, 103 (2005). In *Maine Rubber International v. Environmental Management Group, Inc.*, the plaintiff contracted an engineering firm to perform an environmental site assessment before closing on a commercial real estate transaction in Portland, Maine. 298 F. Supp. 2d 133, 134–35 (D. Me. 2004). The engineers produced a favorable report, but failed to discover "numerous environmental problems on the site . . . ." *Id.* The plaintiff sued for negligence, negligent misrepresentation, and breach of contract under Maine law. *Id.*

The court had no qualms about applying the doctrine to service contracts generally, but found that "[t]he difficult question [was] whether Maine would

11

carve out an exception to the economic loss doctrine for professional service contracts." *Id.* at 137. Examining the facts before it, the court determined that "whatever the applicability of the economic loss doctrine to suits against lawyers and accountants, the logic of *Peachtree* encompasse[d] the relationship" between the plaintiff and the defendant engineers. *Id.* at 137. The court reasoned that they

> were two commercial entities able to bargain over the terms of their agreement, and they entered into a written contract to govern their relationship. There was no risk of harm either to people or to other property. The critical issue . . . as in *Peachtree*, [was the] value and quality of what was purchased.

*Id.* at 137–38 (footnotes omitted). Finding that the defendant "had no mandate to observe a level of professional competence that existed independently or outside the contractual language," the court saw "no reason not to leave [the parties] to their bargain." *Id.* at 138.

One year after *Maine Rubber*, the Law Court addressed a factually analogous situation in *Graves v. S.E. Downey Registered Land Surveyor, P.A.*, 2005 ME 116, 885 A.2d 779. In *Graves* the plaintiff intended to subdivide and develop land adjacent to Acadia National Park. *Id.* ¶ 2, 885 A.2d at 780. The plaintiff hired the defendant, a professional surveyor, to survey the property's boundaries. *Id.* ¶¶ 2–3. After the survey the plaintiff began constructing a home on one of the lots, only to learn that the house was north of the property line and was encroaching on the National Park. *Id.* ¶ 4. Ultimately the plaintiff was forced to move the house due to the error. *Id.* The plaintiff filed a complaint against the defendant for breach of contract and professional negligence, and the trial court found that the defendant had negligently performed the survey causing the plaintiff's damages. *Id.* ¶¶ 6–7, 885 A.2d at 781.

12

On appeal the Law Court quickly established that surveyors are professionals akin to doctors and lawyers, noting that the Legislature has recognized "a cause of action against land surveyors for professional negligence in that there is a statute of limitations for such actions." *Id.* ¶ 10 n.4, 885 A.2d at 782 n.4 (citing 14 M.R.S.A. § 752-D (2003)). While professions differ in substance, "'the elements of professional negligence do not differ from profession to profession.' The plaintiff . . . must establish the appropriate standard of care, demonstrate that the defendant deviated from that standard, and prove that the deviation caused the plaintiff's damages." *Id.* ¶ 10, 885 A.2d at 782 (quoting *Mirriam v. Wanger*, 2000 ME 159, ¶ 17, 757 A.2d 778, 782) (internal citations omitted). The standard of care is that of an ordinarily competent member of the profession, and such "actions are analyzed according to tort law principles instead of contract law" where "liability is predicated on 'deviation from [this standard].'" *Id.* ¶¶ 10–11 (quoting *Johnson v. Carleton*, 2001 ME 12, ¶ 5 n.3, 765 A.2d 571, 573). Applying this standard, the Law Court found adequate evidence on the record supporting the trial court's determination that the defendant had breached his duty of care. *Id.* ¶ 12.

Following *Graves*, the rule in Maine appears to be that an action brought on a professional services contract breached solely through allegedly negligent performance sounds in tort rather than contract.[2] This is consistent with the view announced in *Woolley v. Henderson* "that malpractice actions should be predicated on a single basis of liability—deviation from the professional standard of care," 418 A.2d 1123, 1135 (Me. 1980), and protects the interests of

---

[2] Contracts for tangible products or specified results differ from contracts that only call for intangible professional services. A professional's failure to achieve a promised result may give rise to actions in both contract and tort. *Woolley v. Henderson*, 418 A.2d 1123, 1135 (Me. 1980).

laypersons who are unable to evaluate the performance of the experts they hire and rely on.

While it is not clear to what extent *Graves* conflicts with *Maine Rubber*, it does provide the better rule for this case. Engineering is a licensed occupation governed by a Board of Licensure. *See* 32 M.R.S.A. § 1251 et seq. Like doctors, lawyers, and surveyors, the Legislature has recognized a cause of action for malpractice or professional negligence against engineers. 14 M.R.S.A. § 752-A. Here, Morgan contracted for sound advice born of Criterium-Mooney's professional expertise rather than for a specific product or result. As a professional Criterium-Mooney was obligated to exercise due care to meet its client's reasonable expectations, independent of the contractual terms. *Woolley*, 418 A.2d at 1134–35.

Morgan has pleaded two labels on what is essentially one cause of action. She alleges that Criterium-Mooney breached the contract by performing the inspection negligently and providing an inaccurate report. If Morgan is correct then Criterium-Mooney's liability is based on its fault rather than its failure to achieve an agreed-upon goal. This describes a claim in tort, and under these circumstances Morgan's claim is properly characterized as professional negligence. *See id.* Criterium-Mooney is thus entitled to judgment in its favor on the breach of contract claim. This leaves Morgan's claim for negligent misrepresentation.

In *Chapman v. Rideout* Maine adopted the Restatement (Second) of Torts' definition of negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by

14

> their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

568 A.2d 829, 830 (Me. 1990) (quoting Restatement (Second) of Torts § 552(1) (1977)). In this case "reasonable care or competence" would be the "degree of care that an ordinarily competent [engineer] would exercise in like circumstances." *Graves*, 2005 ME 116, ¶ 11, 885 A.2d 779, 783.

Buyers hire Criterium-Mooney to perform pre-purchase home inspections to help them determine whether or not to go through with a sale. Morgan's experts have testified that Criterium-Mooney failed to identify obvious signs of past and ongoing structural defects in the home. At least one of these experts is a professional engineer able to establish the professional standard of care. If Morgan's experts are correct and Criterium-Mooney was negligent in its characterization of the wet basement or in its failure to note the patchwork in the plaster, then its report was misleading and Criterium-Mooney will be liable for the pecuniary losses resulting from its error. Resolving all ambiguities in favor of the non-moving party, Morgan has generated sufficient controversies of fact to frustrate Criterium-Mooney's motion on this issue.

B.    The Contractual Liability Limitation

Criterium-Mooney's home inspection contract contains a provision expressly limiting its "liability for loss suffered by the client due to any cause" to the inspection fee of $590.00. Assuming without deciding that the cap could apply to this action for professional negligence, Maine generally upholds liability waivers when they "expressly spell out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Lloyd v. Sugarloaf Mountain Corp.*, 2003 ME 117, ¶ 8, 833 A.2d 1, 4 (quoting *Doyle v.*

15

*Bowdoin Coll.*, 403 A.2d 1206, 1208 (Me. 1979)) (quotations omitted); *see Hardy v. St. Clair*, 1999 ME 142, 739 A.2d 368 (upholding liability waiver in employment contract); *Emery Waterhouse Co. v. Lea*, 467 A.2d 986 (Me. 1983) (in commercial lease). In practice this has required the provision to expressly use the word "negligence." *See Lloyd v. Sugarloaf Mountain Corp.*, 2003 ME 117, ¶ 8, 833 A.2d 1, 4; *Hardy*, 1999 ME 142, ¶¶ 4, 6, 739 A.2d 368, 369–70; *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 993 (Me. 1983); *Doyle*, 403 A.2d at 1207–08.

The provision in this contract does not make any reference to liability arising from Criterium-Mooney's negligence, but instead limits the defendant's liability for "any cause." While this over-broad language might inferentially include a release from negligence liability, the courts will not read such "words of general import . . . as expressing" the requisite intent necessary to effect a waiver. *Emery Waterhouse Co.*, 467 A.2d at 993 (citing *Freed v. Great Atlantic & Pacific Tea Co.*, 401 F.2d 266, 270 (6th Cir. 1968)). Furthermore, provisions exempting parties from liability for their own intentional or reckless conduct contravene public policy and are generally void. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 15, 868 A.2d 220, 226 (citing *Lloyd*, 2003 ME 117, ¶ 21, 833 A.2d 1, 7 (Calkins, J., dissenting)); Restatement (Second) of Contracts § 195(1) (1981). This provision attempts to do just that, and is consequently void against public policy.

## C.    Fraudulent or Intentional Misrepresentation

A prima facie case of fraudulent misrepresentation requires evidence of: (1) a false representation; (2) of material fact; (3) with knowledge or reckless disregard of whether it was true or false; (4) for the purpose of inducing action in reliance on the falsehood; and (5) justifiable reliance on the representation resulting in damage. *Me. Eye Care Assocs., P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890

16

A.2d 707, 711. Fraud must be proven by clear and convincing evidence. *Id.* at ¶ 16, 890 A.2d at 711.

Morgan has not produced any evidence that Criterium-Mooney intentionally or knowingly misrepresented the condition of the property. She alleges that the inspector moved quickly through the home and thus missed important clues about its condition. Taken as true this would only show that the inspection was performed negligently. Given that Criterium-Mooney actually conducted the inspection, this Court cannot say that its representations were made in reckless disregard of their truth or falsity. The Court therefore grants Criterium-Mooney's motion for summary judgment on the intentional misrepresentation claim.

### D. The Maine Unfair Trade Practices Act

The UTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *MacCormack v. Brower*, 2008 ME 86 ¶ 5, 948 A.2d 1259, 1261 (quoting 5 M.R.S.A. § 207). "An act or practice is deceptive if it is a material misrepresentation . . . that is likely to mislead consumers acting reasonably under the circumstances." *Maine v. Weinschenk*, 2005 ME 28, ¶ 17, 868 A.2d 200, 206 (citing *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 164–65 (1984)). "An act or practice may be deceptive, within the meaning of Maine's UTPA, regardless of a defendant's good faith or lack of intent to deceive." *Id.* (citing *Binette v. Dyer Library Assoc.*, 688 A.2d 898, 906 (Me. 1996)). However, "a consumer has no private action under the UTPA, even if unfair trade practices have in fact been committed, unless those practices have not only harmed the consumer but also benefited the dealer." *Kleinschmidt v. Morrow*, 642 A.2d 161, 165 (Me. 1994) (quoting *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 777 (Me. 1989)).

In *Adelberg v. Guber* the court applied this principle to dismiss a UTPA claim against a home inspector because the inspector would be paid whether or not it found a defect. 1996 Me. Super LEXIS 256, * 13 (Aug. 2, 1996). The same principle dictates that Criterium-Mooney is entitled to judgment in its favor on Morgan's UTPA claims. Morgan has not produced any evidence to show that Criterium-Mooney stood to benefit by misrepresenting the condition of the home. To the contrary, the evidence indicates that Criterium-Mooney had the right to demand payment for a competent inspection regardless of what it found. The Court therefore grants Criterium-Mooney's motion on this count.

## III.    Claims Against the Sargents

Morgan alleges both fraudulent and negligent misrepresentation against the Sargents. While the Sargents claim that they were not aware of any undisclosed defects in the home before selling it, Morgan has presented evidence to the contrary.

Arthur Jacobson has testified that he witnessed workers repairing water damage to the plaster in the home's living room. If true, this indicates that the Sargents took affirmative steps to mask material defects in the home and supports Morgan's claim of fraud. David Dalessandri and James Thibodeau both testified that in their expert opinion, the Sargents experienced significant water intrusion during their ownership. If true, this could support a finding that the Sargents either intentionally or negligently misrepresented the magnitude of the defects that they did disclose to Morgan.

Based the record there are disputes of material fact that preclude the Court from dismissing Morgan's claims against the Sargents, and the Sargents' motion for summary judgment is denied.

## The entry is:

Criterium-Mooney's motion for summary judgment is **granted** on Morgan's claims for breach of contract, intentional misrepresentation, and violations of the UTPA. Its motion is **denied** on Morgan's claim for negligent misrepresentation, and the Court holds that its contractual liability cap is unenforceable. The Sargents' motion for summary judgment **denied** on all claims.

DATE: _December 16, 2009_

Roland A. Cole
Justice, Superior Court

19

-------------------------------------------------------------------

01 0000001229         FARNUM, REBECCA
   THREE CANAL PLAZA PO BOX 4630 PORTLAND ME 04112-4630
   F     CRITERIUM-MOONEY ENGINEERS          DEF       RTND    08/15/2007

02 0000001422         RIDGE, MARTIN
   26 CITY CENTER PO BOX 7044 PORTLAND ME 04112-7044
   F     KATHERINE MORGAN                    PL        RTND    07/09/2007

03 0000008138         TRAISTER, MICHAEL
   75 PEARL STREET PO BOX 9785 PORTLAND ME 04104-5085
   F     COLIN W SARGENT                     DEF       RTND    03/19/2008