STATE OF MAINE                                          BUSINESS AND CONSUMER COURT

Cumberland, ss.

EYE CARE & EYE WEAR CENTER OF MAINE

                    Plaintiff

            v.                                          Docket No. BCD-CV-14-55✓

ENABLES IT, INC., f/k/a Nexus Management, Inc.

                    Defendant and Third-Party Plaintiff

            and

UNIFIED TECHNOLOGIES, INC., n/k/a
U T WIND-DOWN

                    Defendant and Third-Party Defendant

## ORDER ON DEFENDANT'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

The Motion for Partial Summary Judgment filed by Defendant Enables, It, Inc.,

formerly known as Nexus Management, Inc., is before the court for decision, along with the

opposition filed by Plaintiff Eye Wear and Eye Care Center of Maine and Defendant's reply.

The court elects to decide the Motion without oral argument. *See* M.R. Civ. P. 7(b)(7).

Summary judgment is proper when there exist no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v.*

*R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when

sufficient evidence requires a fact-finder to choose between competing versions of the truth at

trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781 (quotations omitted). A material

fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME

84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through

fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22.

1

Defendant is a provider of information technology (IT) consulting services, and entered into a contract with Plaintiff, to provide such services. Plaintiff's First Amended Complaint claims that Defendant is liable for breach of the contract, but also that Defendant is liable to Plaintiff for negligence in the provision of the contracted for services. Defendant's Motion seeks partial summary judgment on the ground that the negligence claims asserted against it in Counts II and III of Plaintiff's First Amended Complaint are barred by the economic loss doctrine. Plaintiff responds on several fronts, including that the economic loss doctrine, at least as applied in Maine, does not extend beyond contracts for the sale of goods.

The material facts are not in dispute. Specifically, there is no dispute as to the following pertinent facts:

- Plaintiff does not allege that any negligent act or omission of the Defendant caused either personal injury or physical damage or destruction of tangible property. Plaintiff does allege that Defendant's negligence caused Plaintiff to lose information in the form of computer data.

- There are no requirements in Maine that IT service providers like Defendant be licensed or regulated. Likewise, the record does not indicate that there is a uniform or widely established system of accreditation for IT service providers. Although Plaintiff has designated an expert witness regarding the standard of care for IT service providers, the record does not establish that there are any uniformly accepted standards of care for IT service providers comparable to the standards for lawyers and doctors.

Rather than focusing on questions of fact, Defendant's Motion raises two as yet unsettled questions of law about the scope of the economic loss doctrine. The two questions are:

- Whether in Maine the economic loss doctrine applies to contracts for services in addition to contracts for the sale of goods?

- If so, whether the doctrine bars a negligence claim for economic loss arising out of IT services provided under contract?

Both are questions of law, centered on whether, given that there is no claim for personal injury or physical damage to tangible property, the Defendant owes Plaintiff a duty of care to avoid economic loss only. *See Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144,

2

¶ 11, 738 A.2d 839, 844 ("Whether a defendant owes a duty of care to a plaintiff is a matter of law for the court.")

It is perhaps symptomatic of the confusion surrounding the economic loss doctrine that each of the parties to the Motion argues that the other's position falls outside an exception to the general rule, meaning that the parties disagree about what is the general rule and what is the exception. Plaintiff contends that the general rule is a seller of products or services can be liable in tort for negligence as well as liable for breach of contract, except when the sale is of a product and the buyer's loss is limited to injury or loss of the good itself, in which case only contract remedies apply. Defendant contends that the general rule is that, when the plaintiff's loss does not involve personal injury or property damage, tort claims arising out of services provided under contract are cognizable only in a narrow range of cases involving professional negligence, which Defendant contends this case does not involve.

The leading case in Maine on the economic loss doctrine is the Maine Law Court decision in *Oceanside at Pine Point Condominium Owners Assn. v. Peachtree Doors*, 659 A.2d 267 (Me. 1995). In *Peachtree*, the Law Court defined economic loss as "damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits -- without claim of personal injury or damage to other property." *Id.* at 270 n.4 (quoting *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982)). Absent evidence of personal injury or property damage, "[c]ourts generally . . . do not permit tort recovery for a defective product's damage to itself." *Id.* at 273; *see also In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 613 F. Supp. 2d 108, 127 (D. Me. 2009).

As Plaintiff points out, however, the Law Court has never applied the economic loss doctrine to service contracts. Plaintiff also notes that the Law Court has endorsed tort claims for economic loss arising out of contracts for legal and certain other professional services

rendered under contract. Plaintiff thus argues for a narrow reading of *Peachtree*, limited to claims of products liability.

Defendant acknowledges that the economic loss doctrine does not apply in the context of legal and certain other professional services, but points out that several Maine federal court and Superior Court decisions have applied the doctrine to other types of service contracts. *See, e.g., Maine Rubber Int'l v. Envtl. Mgmt. Group, Inc.*, 295 F. Supp. 2d 125, 128-29 (D. Me. 2003);[1] *Bayreuther v. Gardner*, 2000 Me. Super. LEXIS 140 (Cum. Cty. June 21, 2000). Defendant argues for a narrow reading of what it calls the professional services exception to the economic loss doctrine.

Two core principles help define the scope of the economic loss doctrine.

The first is that, in tort, the general negligence duty—the duty to use reasonable care—does not extend to purely economic loss: "Generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 657 (5th ed. 1984). *See also* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR ECONOMIC HARM § 1 cmt. c (Tentative Draft No. 1, 2012) ("An actor has no general duty to avoid the unintentional infliction of economic loss on another."). This means that a claim of negligence generally must be predicated on personal injury or physical property damage, and cannot be based solely on economic loss.

The second core principle is that the rights, duties and risks of the parties to a contract should not be altered by injecting tort principles into the contractual relationship, unless the

---

[1] In *Maine Rubber*, Judge Hornby pointed out that "[t]here is nothing in *Peachtree* that gives any hint where the Law Court might come out" on the extent to which the economic loss doctrine applies to service contracts as well as to contracts for the sale of goods. 295 F. Supp. 2d at 129. However, he proceeded to resolve that question in favor of applying the economic loss doctrine to a contract for services between "two commercial entities able to bargain over the terms of their agreement [that] entered into a written contract to govern their relationship." *Id.* at 129-30.

4

claim is for personal injury, property damage, fraud or other intentional wrongdoing or some other form of harm cognizable in tort law. As one commentator expresses it, "The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Sidney R. Barrett, Jr., Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C. L. REV. 891, 894 (1989).[2]

It follows from the confluence of these principles that, with limited exceptions, "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." RESTATEMENT (THIRD) OF TORTS—LIABILITY FOR ECONOMIC HARM, Tentative Draft No. 1, § 3, Preclusion of Tort Liability Arising from Contract (Economic Loss Rule).[3]

The exception to the economic loss doctrine that is pertinent here arises when the tort claim for a purely economic loss is based on a professional duty arising out of the nature of the service, a duty beyond the general duty to use ordinary care.

Maine law, like that of other states, recognizes that the providers of certain types of services owe a duty beyond the general duty to use reasonable care to avoid personal injury and property damage, and beyond the duties and obligations defined by the contract between the provider and the recipient. *See Graves v. S.E. Downey Registered Land Surveyor, P.A.*, 2005 ME 116, ¶ 10, 885 A.2d 779, 782 ("Medical and legal malpractice actions are analyzed according to

---

[2] The boundary-line role of the economic loss doctrine means that it may not apply when there is no contract defining the parties' relationship. *See* V. Johnson, The Boundary-Line Function of the Economic Loss Rule, 66 WASH & LEE L. REV. 523, 555 (2009) ("If there is no contract between the parties to litigation, there is no boundary-line function to be performed by the economic loss rule.")

[3] Another exception to the economic loss rule involving fiduciary relationships has a similar conceptual basis—a duty arising from both the nature of the service provided and reliance by the recipient. *See generally* A. Esquibel, The Economic Loss Rule And Fiduciary Duty Claims: Nothing Stricter Than The Morals Of The Marketplace?, 42 VILL. L. REV. 789 (1997).

tort law principles instead of contract law"). Because such an independent duty exists for lawyers, doctors and some other members of what traditionally are considered professions, this exception to the economic loss doctrine is often called the "professional services" exception.

The current draft of the Restatement (Third) of Torts provides that "[a] professional is subject to liability in tort for economic loss caused by the negligent performance of an undertaking to serve a client." Restatement (Third) of Torts—Liability for Economic Harm, Tentative Draft No. 1, § 3, Preclusion of Tort Liability Arising from Contract (Economic Loss Rule), and § 4, Professional [16] Negligence Resulting in Economic Loss (April 2012). In defining "professionals," the Restatement draft states: "Lawyers, doctors, and accountants are invariably regarded by courts as professionals; insurance agents and architects are examples of additional parties this Restatement would so recognize, whereas construction contractors and tradesmen are on the other side of the line." *Id.* § 4 cmt. b.

What defines "professional" services for purposes of the economic loss doctrine are factors that include the extent to which the service in question involves specialized knowledge and skill; the extent to which the recipient of the services relies upon the provider's specialized knowledge and skill, and, perhaps most important, the existence of uniformly settled and applied standards of practice and performance reflected in licensing requirements, laws and regulations, accreditation standards, codes of conduct, local custom, or other sources. *See, e.g., Pendleton Yacht Yard, Inc. v. Thomas H. H. Smith & Marine Design & Survey, Inc.*, 2003 Me. Super. LEXIS 49; *Terracon Consultants Western Inc. v. Mandalay Resort Group*, 125 Nev. 66, 206 P. 3d 81, 87 (Nev. 2009); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 244 (Tex. 2014); *Sharon Acad. v. Wieczorek Ins.*, 2013 Vt. Super. LEXIS 34 (Wash Cty. 2013).

The reason why licensure, for example, is such an important criterion in this setting that the license in and of itself imposes a legal duty on the licensee to adhere to a level of skill and a standard of practice that are inherent in the rendition of the service regardless of the

terms of any contract. To hold such a license is thus to assume a professional duty of care, beyond that of the duty to use ordinary care that applies generally, and apart from any duty specified by contract. Because a professional is accountable for professional negligence whenever the professional service is rendered, the primary justification for the economic loss doctrine—the need to maintain a boundary between contract liability and tort liability—disappears.

Licensure is not the only source of a professional duty of care, as accreditation and certification standards may serve a similar function in defining such a duty. *Pendleton Yacht Yard, Inc. v. Thomas H. H. Smith & Marine Design & Survey, Inc.*, 2003 Me. Super. LEXIS 49.

The services that have been recognized in Maine to be "professional" for purposes of creating a professional duty of care include those of lawyers, doctors and surveyors—all occupations requiring licensure and involving defined standards of practice. *See Graves v. S.E. Downey Registered Land Surveyor, P.A., supra*, 2005 ME 116 at ¶ 10, 885 A.2d at 782.

On the other hand, not every service can be said necessarily to be subject to standards of practice so clearly and widely established as to justify imposing an independent, extra-contractual duty of care to avoid economic loss on the service provider.[4] Hence, tradespeople and other providers of commercial services are liable in tort for economic loss only if it is the result of personal injury or property damage. Otherwise, their liability for economic loss is defined by the services contract.

Thus, the issue before the court boils down to whether IT providers are within the professional services exception to the economic loss doctrine that covers lawyers and doctors.

---

[4] The term "professional services" is a term of art in many insurance policies and contracts, and may have different meanings in different contexts. Plaintiff's reliance on a decision of this court to support its economic loss argument is misplaced—the decision interprets the term "professional services" as used by the parties to a contract, not in the context of the economic loss doctrine, which did not apply inasmuch as the loss claimed in the case included physical damage to tangible property. *See 415 Congress Street Properties, LP v. URS Corp.*, 2011 WL 9377917 (Me. Bus. & Cons. Ct. July 30, 2012).

On this record, the court concludes that IT service providers such as the Defendant are not "professional" service providers for purposes of the economic loss doctrine. There are no state licenses, laws or rules or regulations specifically for IT service providers, and therefore no standards for IT services that are so uniformly established and applied as to be inherent in the rendition of the service. The record also does not indicate the existence of universally accepted accreditation standards, codes of professional conduct or other codified standards of practice that might be the equivalent of licensing standards. In other words, what is lacking is the basis for defining and imposing an extra-contractual duty of professional care, enforceable in tort. This conclusion means that the Defendant's liability in tort is limited to claims for personal injury and physical damage, and that the Defendant's liability for pure economic loss is defined by the services contract.

Plaintiff appears to make a fallback argument that the Defendant is liable in tort because the Defendant's services caused damage to Plaintiff's property—computer data lost due to negligence on the part of the Defendant. However, the loss of computer data is a loss of intangible property—information—that does not qualify as physical damage to tangible property for purposes of imposing liability for ordinary negligence. As noted above, "there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from *tangible physical harm to persons and tangible things*." W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON THE LAW OF TORTS, *supra* § 92 at 657 (5th ed. 1984)(emphasis added). *See also Rockport Pharmacy Inc. v. Digital Simplistics, Inc.,* 53 F.3d 195, 198 (8th Cir. 1995).

Accordingly, because the loss or damage alleged by Plaintiff is limited to economic loss and does not include personal injury or physical damage to tangible property, because Defendant's services were rendered under a contract with Plaintiff, and because the Defendant's services were not "professional" services giving rise to an independent duty of due care

8

enforceable in tort, the economic loss doctrine applies, and the Defendant is entitled to partial summary judgment on the Plaintiff's negligence claims against it.

It is hereby ORDERED: The Motion for Partial Summary Judgment filed by Defendant Enables, It, Inc. is granted. Defendant is granted judgment on Counts II and III of the First Amended Complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this order by reference in the docket.

Dated November 16 2015

_____
A. M. Horton
Justice, Business and Consumer Court

**Eye Care & Eye Ware Center of Maine**
Plaintiff

v.                                          DOCKET NO. BCD-CV-2014-55

**Enables IT Inc., f/k/a Nexus Management, Inc.**
Defendant


v.


**Unified Technologies, Inc., nka UT Wind-Down**
Third-Party Defendant


| | |
|---|---|
| Eye Care & Eye Ware Center of Maine | Jeffrey Edwards, Esq. & Benjamin Piper, Esq. One City Center P.O. Box 9546 Portland, ME 04112-9546 |
| Enables IT Inc. | Benjamin Leoni, Esq. One Canal Plaza Suite 1000 P.O. Box 7320 Portland, ME 04112-7320 |
| Unified Technologies, Inc., N/K/A UT Wind-Down | William Druary, Jr., Esq. 44 Elm Street P.O. Box 708 Waterville, ME 04901-0708 |